**BANK OF NEW ENGLAND, Appellant,**

v.

**BWL, INC., Appellee.**

**Civ. No. 90–0053–P.**

United States District Court,
D. Maine.

Nov. 9, 1990.

But, as shown above, the removal statute does not apply to an action already pending in the district court.

George J. Marcus, Portland, Me., for appellant.

David J. Perkins, Portland, Me., for appellee.

## MEMORANDUM OF DECISION AND ORDER DISMISSING APPEAL

GENE CARTER, Chief Judge.

This case comes before the Court on appeal from an order of the United States Bankruptcy Court for the District of Maine. For the reasons discussed below, the appeal will be dismissed.

### I. BACKGROUND

BWL, Inc., d/b/a Portland Regency Hotel (hereinafter Debtor or Appellee), filed a voluntary bankruptcy petition on February 10, 1989, seeking protection under Chapter 11 of the Bankruptcy Code. On December 8, 1989, Debtor (a debtor-in-possession) filed a Motion for Authorization to Obtain Credit pursuant to 11 U.S.C. section 364(d)(1). Bankruptcy Judge James A. Goodman granted Debtor's Motion, thereby authorizing Debtor to borrow $600,000 from Key Bank of Maine in exchange for a super-priority lien.[1] Bank of New England (hereinafter Appellant), a secured creditor of Debtor, appeals to this Court to vacate Judge Goodman's order.

The postpetition borrowing was intended to permit Debtor to refurbish the Portland Regency Hotel's restaurant, build a large conference center, and create an executive dining room. The record reflects that Debtor expected construction to be completed in April or May 1990. Debtor scheduled conferences and other events in the facility on that assumption. The record does not reflect the date of actual completion of the new facilities. Transcript of Hearing on Debtor's Motion for Authorization to Obtain Credit at 53–54, 59 (December 27, 1989) (testimony of Eric Cianchette) (hereinafter Transcript); Affidavit of Eric L. Cianchette at ¶¶ 6, 11 (Docket No. 4).

The evidentiary hearing held before the Bankruptcy Court on December 27, 1989 which resulted in Judge Goodman's order consisted of testimony by two witnesses presented by Debtor. Peter Keim is a hospitality industry consultant who was admitted as an expert witness. Transcript at 12–13, Exhibit A. Eric Cianchette is a "Maine partner" in Debtor and Debtor's president. *Id.* at 49. Keim testified to the importance of an expanded conference facility to the Regency Hotel's financial health. Keim supported his analysis with "lost business reports" which identified some of the event business purportedly lost to the Regency due to the insufficiency of its facilities. *See* Transcript at Exhibit D. Keim also projected the increased revenue and attendant improved value which would accrue to Debtor's estate as a result of the construction of the new conference facility

---

1. The full text of section 364(d) of the Bankruptcy Code is as follows:

    (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

    (A) the trustee [or debtor-in-possession] is unable to obtain such credit otherwise; and

    (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

    (2) In any hearing under this subsection, the trustee [debtor-in-possession] has the burden of proof on the issue of adequate protection.

and renovation of the restaurant. *See* Transcript at Exhibit B.

Cianchette testified to Debtor's inability to secure credit without granting a super-priority lien as well as to the event business lost by the Regency Hotel. Appellant offered no witnesses or other evidence on the record.[2] Judge Goodman issued a preliminary order on January 12, 1990, based on this record. The order included these findings:

—Debtor designed a renovation and construction program for the dining room, a conference center, and an executive dining room;

—the cost of the renovation and construction is expected to be $600,000.00;

—the Debtor is unable to obtain the necessary financing without the approval of a senior lien on the property; and

—the increase in the value of Debtor's estate will afford adequate protection to the pre-existing secured creditors.

Order Authorizing BWL, Inc. to Obtain Credit Pursuant to 11 U.S.C. § 364(d)(1) (Goodman, J.) (hereinafter Preliminary Order). Pursuant to those findings, Judge Goodman conditionally authorized the borrowing and a super-priority lien.

The Preliminary Order required Debtor to submit to the Bankruptcy Court and Appellant's counsel a letter of commitment from Key Bank identifying the specific terms and provisions of the loan. Appellant was given forty-eight hours after the submission of the commitment letter to object to the terms of the loan. A further hearing was scheduled for February 1, 1990.

Appellant filed a Motion to Stay Construction Activities in the Bankruptcy

Court on January 10, 1990. On January 30, 1990, Appellant amended that Motion in an effort to block all construction and borrowing activities pending appeal of the Bankruptcy Court's order. Appellant also objected, pursuant to Judge Goodman's preliminary order, to the terms of the letter of commitment provided by Key Bank. On February 1, 1990, Judge Goodman issued a final order approving the borrowing and super-priority lien according to the terms of a commitment letter submitted by Debtor from Key Bank. Final Order Authorizing and Approving Obtaining of Credit Pursuant to 11 U.S.C. § 364(d) (Goodman, J.). Judge Goodman denied Appellant's Amended Motion for Stay on February 6, 1990.

Appellant filed a Motion for Stay Pending Appeal with this Court on February 2, 1990 along with a Notice of Appeal. On February 21, 1990, this Court denied the Motion for Stay on the grounds that the Motion was unaccompanied by a factual record. On March 2, 1990, Appellant renewed its Motion for Stay in this Court and included with that Motion the complete record of the Bankruptcy Court's proceedings and all related materials. This Court denied the renewed Motion for Stay on April 4, 1990, holding that Appellant had not demonstrated a likelihood of success on the merits. *See* Order Denying Motion for Stay Pending Appeal (Docket No. 5) (Carter, C.J.).

Appellant now presents three issues for appeal:

(1) was Appellant "adequately protected" under the terms of the postpetition borrowing and super-priority lien as required by section 364(d)(1)(B)?[3]

---

**2.** The record also contained four exhibits:
—Peter Keim's resume (Exhibit A);
—a comparison of two budgets considering revenues and expenses including the conference facility and excluding the facility (Exhibit B);
—a preliminary construction budget (Exhibit C); and
—several "lost business reports" (Exhibit D).

**3.** Appellant suggests that this issue should be divided into two separate questions: (1) "Did the Bankruptcy Court err in finding that the Bank of New England's position and security

were 'adequately protected' in the face of the proposed § 364(d)(1) borrowing and the terms thereof?"; and (2) "Did the Bankruptcy Court err in finding that Bank of New England's interests were 'adequately protected' before the terms and conditions to be incorporated in the proposed borrowing were before it?"

This division of the question is unnecessary. The second issue is subsumed within the first issue. If the answer to the first question is "yes," then the second issue is moot. If the answer to the first question is "no," logic would not permit an affirmative answer to the second

(2) did the Debtor satisfy its burden of establishing that it was "unable to obtain credit otherwise," as required by section 364(d)(1)(A)?

(3) as a matter of law, does section 364(d)(1) of the Bankruptcy Code permit authorization of borrowing to fund activities which are not "essential" to the preservation of Debtor's estate?

Appellee argues that the Court must first address the threshold question of whether there is proper jurisdiction for this appeal before it reaches these substantive issues. Appellee asserts that the issues put forth by Appellant are moot and, therefore, that the Court is without jurisdiction. The Court is satisfied that Appellee is correct and that this Court is without jurisdiction to decide this appeal.

## II. MOOTNESS

■ The case or controversy requirement in Article III of the United States Constitution limits the jurisdiction of the federal courts to those plaintiffs who can "demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). *Accord Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). A plaintiff must demonstrate that he is suffering a concrete and direct injury, or the danger that such injury is posed by a real and immediate threat, before a federal court may assume jurisdiction. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

■ Mootness inquiries are nothing more than continuing assessments of standing over a period of time. The concrete and direct injury which existed or was threatened at the commencement of an action must survive throughout the course of a litigation. If the purported injury or threat of injury does not survive, the case is moot. As this Court has previously acknowledged, "[t]he central question is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'" *Celli v. Webb*, 696 F.Supp. 738, 739 (D.Me.1988) (quoting Wright & Miller, *Federal Practice and Procedure* § 3533.1, pp. 222, 224 n. 33 (1984)).[4]

### A.

■ The Supreme Court long ago prescribed the appropriate remedy in appeals, such as the present appeal, where changed circumstances place in doubt the existence of a case or controversy:

when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal [as moot].

*Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). This constitutional mandate to refrain from issuing advisory opinions on moot questions is no less effective in bankruptcy cases. *See, e.g., Sullivan Central Plaza, I, Ltd. v. BancBoston Real Estate Capital Corp.*, 914 F.2d 731 (5th Cir.1990); *Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547, 1554, 1556 (11th Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988); *In re Information Dialogues, Inc.*, 662 F.2d 475, 476 (8th Cir. 1981).

■ There is no effective remedy available to Appellant which this Court may grant. Section 364(e) governs:

---

question. Rather than adopting Appellant's configuration of the issues, the Court will address the "adequate protection" issue as one question.

**4.** The Court may raise this issue *sua sponte* since mootness is a question of the Court's jurisdiction. *Id.*

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). In sum, the Court is without authority to either invalidate the authorization for the loan or adjust the super-priority lien granted to Key Bank. The Court cannot vacate Judge Goodman's order, as Appellant requests.

The rationale supporting this section of the Bankruptcy Code is apparent:

> The policies behind section 364(e) ... indicate that a claim is moot as soon as a lender has relied on the authorization.... It reflects the general notion that an appeal is moot when a change in circumstances prevents effective relief and the specific notion in bankruptcy law that there is a need for finality in orders regarding stays.

*In re Adams Apple, Inc.*, 829 F.2d 1484, 1489 (9th Cir.1987) (citation omitted). *See also In re Texaco, Inc.*, 92 B.R. 38, 45 (S.D.N.Y.1988). The legislative history of section 364(e) supports the *Adams Apple* court's conclusion:

> Subsection (e) provides the same protection for credit extenders pending an appeal of an authorization to incur debt as is provided under section 363[m] for purchasers: the credit is not affected on appeal by reversal of the authorization unless the authorization and the incurring of the debt were stayed pending appeal. The protection runs to a good faith lender, whether or not he knew of the pendency of the appeal.[5]

*In re Revco D.S., Inc.*, 901 F.2d 1359 (6th Cir.1990) (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 347, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6303).

Since section 364(e) prohibits courts from adjusting or vacating an order authorizing postpetition borrowing and a super-priority lien in the absence of a stay of that order, the regular practice is to hold that any appeal of an order authorizing postpetition borrowing is moot. *See In re Ellingsen MacLean Oil Co.*, 834 F.2d 599, 604–05 (6th Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *Adams Apple*, 829 F.2d 1484, 1487–89 & n. 6 (9th Cir.1987); *In re Texaco, Inc.*, 92 B.R. at 44 n. 10, 51–52; *In re Graphic Arts Lithographers, Inc.*, 71 B.R. 774, 776–77 (Bankr. 9th Cir. BAP 1987). *See also Sullivan Central Plaza*, 914 F.2d 731 (5th Cir.1990) (reviewing order based on section 362); *In re Citizens Mortgage Investment Trust*, 25 B.R. 1005, 1007–08 (D.Mass.1982) (reviewing order based on section 363(m) and reaching the same conclusion as to mootness on appeal).

Section 364(e) is directly on point in this case. The Bankruptcy Court issued a valid order authorizing borrowing by the Debtor and a super-priority lien. The Bankruptcy Court refused to stay the order pending appeal. This Court twice refused to stay the order pending appeal. As a direct result, Key Bank relied in good-faith on the Bankruptcy Court's order and disbursed at least part of the $600,000 loan to Debtor. Affidavit of Eric L. Cianchette at ¶ 10 (Docket No. 4) ($50,000 had been received prior to March 28, 1990). Further, nine months have now passed since the authorization for the postpetition borrowing was given. It is very likely that all of the money has now been disbursed by Key Bank and spent by Debtor, and that construction is complete and the renovated facilities are fully functional.

Simply, these eggs cannot be unscrambled. Even if this Court were to hold that Debtor did not satisfy its burdens in the

---

**5.** Appellant does not complain on appeal that Key Bank failed to act in good faith when it granted the postpetition secured loan to Debtor in return for the super-priority lien. Further, Appellant did not raise the issue of good faith in the Bankruptcy Court's hearings. Thus, there is nothing in the record to suggest that Key Bank acted other than in good faith.

hearing, or that a 364(d)(1) borrowing and lien are not appropriate on the facts of this case,[6] Appellant is without an effective remedy on appeal. Accordingly, the appeal is moot.

### B.

Appellant replies to the mootness argument by complaining that it is not *currently* adequately protected. Appellant asks this Court to grant a limited remedy which Appellant contends would be consistent with section 364(e):

> If the authorization is reversed on appeal only the extender of credit is protected under section 364(e). A determination that adequate protection had not been given to the holder of an existing lien would require that the deficiency be corrected and would, in addition, give rise to a priority claim under section 507(b).

Reply Brief of Bank of New England at 2 (quoting 2 *Collier on Bankruptcy* (15th ed. 1989) ¶ 364.06 at 364–16). Appellant goes on to argue, relying on this authority, that

> the doctrine of mootness extends only to whether the priority position granted to Key Bank can be undone. It does not preclude this Court from determining that, because the Bankruptcy Court's findings regarding Bank of New England's [Appellant's] adequate protection were erroneous, the case should be remanded for further action to ensure that Bank of New England is granted the priority and protection that it deserves under the circumstances.

*Id.*

"Adequate protection" is not defined in the Bankruptcy Code. Title 11 U.S.C. section 361 describes several ways in which a court may provide adequate protection to creditors; however, the definition of the phrase itself "is left to the vagaries of each case...." *In re Beker Industries Corp.*, 58 B.R. 725, 736 (Bankr.S.D.N.Y.1986). The focus of adequate protection is "protection of the secured creditor from diminution of

its collateral during the reorganization process." *Id.* Thus, assessing whether this Appellant is adequately protected requires determining how much, if at all, the value of Debtor's estate has increased as a result of the construction and renovations funded by the postpetition borrowing.

If the increase in the estate's value exceeds the amount of the debt secured by Key Bank's super-priority lien, then Appellant suffers no prejudice from Debtor's postpetition borrowing and the granting of a super-priority lien. Judge Goodman found that Debtor had satisfied its burden of proving that the Bank was adequately protected. The complete text of Judge Goodman's finding with respect to the adequate protection issue is as follows:

> FOUND, That the increase in the value of the Portland Regency as a result of the aforesaid renovations and construction is such that the creditors who hold liens on the property will be adequately protected, notwithstanding the grant of a lien which is prior in right to the liens of existing lienholders; ...

Preliminary Order at 2.

This finding is apparently based on Keim's testimony that the total dollar increase in profitability for Debtor would approximate $551,000. *See* Transcript at 28–29, Exhibit B. Capitalizing that increased profit at a sixteen percent rate (which Keim identified as very conservative), the increase in the value of Debtor's estate would approximate $3,442,000. *Id.* at 28–29, Exhibit B. Keim further testified that an increase in the value of Debtor's estate by $600,000, the full amount of the super-priority lien, could be achieved if the renovations increased the Hotel's revenues by only $96,000. *Id.* at 46. None of this testimony was rebutted by other evidence or shaken by cross-examination.

The record now before the Court, therefore, lends substantial support to Judge Goodman's finding that Debtor satisfied its burden of showing that Appellant was adequately protected as required by section

---

**6.** The Court offers no opinion on the merits of any of the issues submitted for appeal because they are not necessary to this decision.

364(d)(1)(B). The Court need not decide, however, whether the Bankruptcy Court's findings of fact with regard to adequate protection were "clearly erroneous." [7]

Appellant seeks the intervention of this Court to guarantee Appellant's adequate protection *at present and in the future.* There are two reasons why such an intervention is impossible in these circumstances. First, the issues submitted by Appellant to this Court in this appeal bear no necessary relationship to the present and future adequacy of Appellant's protection. A decision by this Court that adequate protection was not sufficiently established at the Bankruptcy Court's hearing would not inevitably lead to the conclusion that Appellant is currently inadequately protected. Debtor may not have satisfied its burden in the Bankruptcy Court hearing; however, that failure tells this Court absolutely nothing about the current status of Debtor's estate or Appellant's secured interest in that estate. Resolving either or both of the other issues presented to this Court similarly provides Appellant with no grounds for seeking whatever relief may be left after this Court gives full effect to section 364(e): In short, Appellant asks this Court to resolve an issue which Appellant itself has not properly brought before the Court.

Second, Appellant asks this Court to make a finding which cannot be supported by this record. Nothing in the record submitted on appeal discusses the *current* status of Debtor's estate. As noted earlier, the adequacy of Appellant's protection depends upon the revenues and valuation of Debtor's estate. All of the testimony at the Bankruptcy Court's hearing and all related evidentiary submissions discussed *projections* of the Debtor's revenues and valuation made before the borrowed money was disbursed and the construction was commenced. Even if the Court wanted to address an issue not properly presented by Appellant, the Court would search in vain

through this record for any factual basis for determining the current or future adequacy of Appellant's protection.

Accordingly, this appeal from the Final Order of the Bankruptcy Court is hereby DISMISSED.

So ORDERED.

---

7. Section 8013 of the Bankruptcy Rules establishes the standard for District Courts reviewing appeals of Bankruptcy Court decisions:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.