In re FLORIDA WEST GATEWAY, INC.
d/b/a Florida West Airlines, Debtor.

**Bankruptcy No. 92–14091–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Nov. 11, 1992.

Joel L. Tabas, Miami, Fla., Trustee.

John Olson, Stearns Weaver, et al., Tampa, Fla., for trustee.

Andrew B. Hellinger, Mishan, Sloto, Hoffman & Greenberg, P.A., Miami, Fla., for Jetlease, Inc.

Paul S. Singerman, Stroock & Stroock & Lavan, Barbara L. Phillips, Phillips and Phillips, P.A., Miami, Fla., for Aviation Engine Services.

## ORDER DENYING FIRST UNION'S AND AVIATION ENGINE SERVICE, INC.'S MOTIONS FOR RECONSIDERATION OF FINAL ORDER AUTHORIZING FLORIDA WEST GATEWAY, INC. TO OBTAIN CREDIT FROM JETLEASE, INC.

A. JAY CRISTOL, Bankruptcy Judge.

This matter came on before the Court on Thursday, October 22, 1992 upon First Union's Motion for Reconsideration of Final Order Authorizing Florida West Gateway, Inc. to Obtain Credit from Jetlease, Inc. and Aviation Engine Service, Inc.'s Motion for Reconsideration of September 17, 1992 Final Order Authorizing Debtor to Obtain Credit from Jetlease, Inc (First Union and Aviation Engine Service, Inc. are referred to herein as "Movants"). Movants requested the court reconsider its Final Order Authorizing Debtor to Obtain Credit from Jetlease, Inc. and strike a certain provision from the Loan Agreement between the Trustee and Jetlease.

### FACTS

On August 20, 1992, Joel L. Tabas, Trustee of the Estate of Florida West Gateway, Inc. d/b/a Florida West Airlines (the "Trustee") filed his Emergency Motion for Authorization to Obtain Post–Petition Financing Pursuant to § 364(c) of the Bankruptcy Code and requested an emergency hearing. The Trustee sought approval to obtain a $500,000.00 line of credit from Jetlease, Inc. ("Jetlease") pursuant to a loan agreement ("Loan Agreement") negotiated by and between the Trustee and Jetlease. The Trustee requested that Jetlease extend credit to the Trustee on a secured basis, however, such lending would not be on a "super priority" basis. As part of the loan agreement, the lender requested the Trustee execute a Note Cancellation Agreement acknowledging that certain prepetition obligations between the estate and

Jetlease and/or its subsidiaries had been cancelled, prepetition.

The Trustee concluded that the only financing available was offered by Jetlease. The Trustee and his counsel negotiated at arms length over the terms and conditions of the Loan Agreement. This Loan Agreement provided that Jetlease would loan $500,000.00 to the Trustee and the Trustee would grant Jetlease a post-petition lien and acknowledge, in the form of a Note Cancellation Agreement, that certain mutual obligations by and between the estate and Jetlease and/or its subsidiaries had been cancelled. The Loan Agreement also provided for the limitation of monthly professional fees and costs and for the sharing of funds *pari passu* if there were insufficient assets to pay Jetlease and certain professionals in full.

Without the proposed credit facility by Jetlease, the Trustee concluded he would not have had funds necessary to meet payroll, purchase inventory and pay other expenses necessary for the continued operation of the business. No other creditor, including Movants, offered to extend the credit requested by the Trustee. Accordingly, on August 20, 1992, the Court entered a Preliminary Order Authorizing the Trustee to Obtain Credit from Jetlease, Inc. and gave notice of a final hearing. The Trustee demanded and received from Jetlease full funding of the $500,000.00.

On September 9, 1992, the Court held a final hearing on the Trustee's request for financing and approve of the Loan Agreement with Jetlease. Movants did not object to the post-petition financing; however, Movants did object to the acknowledgment of the cancellation of mutual prepetition obligations between the estate and Jetlease. On September 17, 1992, the court entered a Final Order Authorizing Florida West Gateway, Inc. to Obtain Credit From Jetlease, Inc. ("Final Order") and overruled Movants' objections. The Court directed Jetlease to provide copies of all documents relating to the Note Cancellation Agreement to Movants. Movants were permitted to file motions for reconsideration of the

Order which Motions are presently before the Court.

In compliance with the Final Order, counsel for Jetlease delivered a lengthy memorandum setting forth the pre-petition obligations between the estate and Jetlease and/or its subsidiaries. Counsel also offered movants' attorneys the opportunity to review all original lease documents. Movants' counsel elected not to review the original documents.

## LAW

### A. *Section 346.*

■ Section 346 provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession. Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide "incentives to the creditor to extend post-petition credit." *In re Ellingsen MacClean Oil Co., Inc.*, 834 F.2d 599, 603 (6th Cir.1987), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). Although 11 U.S.C. § 364 enumerates some incentives that a court may grant to post-petition lenders, the list is not exhaustive. Courts frequently have authorized the use of inducements not specified in the statute where a more traditional 364(c) arrangement may not suffice. *Ellingsen* 834 F.2d at 603.

■ The Final Order granted a § 364(c) priority to the post-petition debt and approved the Trustee's acknowledgment of the cancellation prepetition of certain pre-petition obligations between Jetlease and the estate. Movants contend that the Trustee could have negotiated a better deal and that the acknowledgment depletes assets of the estate to the detriment of unsecured creditors without consideration. However, the Movants offered no evidence in support of this position. In fact, First Union stated in its moving papers that it does not "dispute that the notes were in fact cancelled under applicable law." Nonetheless, Movants argued that - the Court should modify the Loan Agreement after Jetlease relied on the Final Order and

fully funded the loan merely because Movants believe a better deal can be made.

The Court finds that as consideration for the $500,000.00 loan to the Trustee, Jetlease was granted, under 11 U.S.C. § 364(c), a lien on available assets and an acknowledgment that certain mutual obligations between Jetlease and the estate had been cancelled. This was part of the whole "package" authorized under § 364(c). See, *In re: Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599 (6th Cir., 1987); *In re: Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir.1987).

### B. *Failure To Obtain A Stay.*

■ Under section 364(e), an aggrieved creditor's failure to obtain a stay pending appeal may require dismissal of an appeal as moot. Further, courts have held that as long as the Loan Agreement was approved under § 364, the Final Order should be protected by § 364(e). *In re Ellingsen MacLean*, 834 F.2d 599, 604–05; *see also In re Adams Apple, Inc.*, 829 F.2d 1484, 1487–89 & n. 6 (9th Cir.1987); *In re Texaco Inc.*, 92 B.R. 38, 44 n. 10, 51–52 (S.D.N.Y. 1988); *In re Graphics Arts Lithographers, Inc.*, 71 B.R. 774, 776–77 (9th Cir. BAP 1987).

Movants did not seek a stay of the Final Order. Nor did the movants offer to loan $500,000.00 to the Trustee on any terms, let alone those negotiated by the Trustee. Nonetheless, Movants argue that this matter is not moot despite 11 U.S.C. § 364(e) which provides:

> The reversal or modification on appeal of an authorization under this section to obtain creditor incurred debt, or of a grant under this section of a priority lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to any entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

Movants cite the case of *In re: Saybrook Manufacturing Co., Inc.*, 963 F.2d

1490 (11 Cir.1992) to support their position. In *Saybrook*, the court held that a cross-collateralization clause in post-petition financing approved under § 364(c) is invalid and therefore, § 364(e) does not render an appeal moot. In *Saybrook*, the lender agreed to loan funds to the debtor in exchange for a provision stating that all pre-petition and post-petition property of the debtor's estate would serve as security for the loan. *Id.* at 1496. *Saybrook* is not similar to the case at hand. In the instant case, Jetlease is not collateralizing a pre-petition claim. Rather, the Trustee is acknowledging that mutual obligations between Jetlease and/or its subsidiaries and the estate were cancelled, prepetition.

*In re: Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599 (6th Cir.1987) is similar to the case now before the Court. As incentive for the extension of credit, the debtor in *Ellingsen MacLean* agreed to "settle all controversies regarding the validity of the lenders' security interest ..." by waiving any objections they may have with respect thereto. *Id.* at 600–01. The court found this provision to be necessary in light of continuing losses, depletion of assets and a risky situation. *Id.* at 604. In *Ellingsen MacLean*, the court held that the allowance of this provision as a financing tool does not deprive the order of § 364(e) protection. *Id.* The Court finds this case persuasive. As in *Ellingsen MacLean*, the Court approved the entire Loan Agreement, Jetlease fully funded the loan, Movants failed to obtain a stay of the Final Order and Movants did not offer the Trustee more favorable financing. *Id.* at 603. See, also, *In re Revco D.S., Inc.*, 901 F.2d 1359, 1364 (6th Cir.1990).

Chapter 11 envisions the continued operation of a debtor's business, but the need for fresh capital and difficulties in obtaining the capital and ability to run a business are obvious. Lenders and suppliers are understandably reluctant to do business with a debtor who is in bankruptcy and who may have few, if any, unencumbered assets to offer as collateral. Section 364 is designed to encourage post-petition financing by authorizing security in the debtor's assets and giving the lender priority over administrative costs. It provides for approving such loans on an expedited basis after notice and hearing. Sub-section 364(e) in turn protects the authorization for priority on a lien from reversal or modification on appeal, as long as the order has been stayed pending appeal and the creditor extended credit in good faith. This good faith requirement allays creditors' concerns about the abuse of the process. A lender makes advances in reliance upon such orders authorized by § 364. The Chapter 11 process would be undermined if this Court were to, in effect, undo those orders after the debtor has stabilized its business and may have the ability to obtain credit on more favorable terms than previously negotiated. Limiting § 364(e) protection to merely new advances under a loan only undercuts the goal of providing incentives to lenders to extend post-petition credit. The Court is mindful that an opposite ruling will cause a chilling effect on DIP lending.

In this case, the Trustee was not making payments on its obligations and needed cash to pay administrative expenses, employee wages and other overhead. No other creditor was willing to step forward on the same or better terms than offered by Jetlease. The acknowledgement by the Trustee that certain mutual obligations between the estate and Jetlease and/or its subsidiaries had cancelled pre-petition was necessary to induce Jetlease to extend credit in a risky situation. Since the Debtor was experiencing continued losses, more was at risk. The collateral base available to secure the loan from Jetlease was being depleted on a daily basis. Thus if § 364(e) protection were limited in all cases to new advances, Jetlease might not be willing to extend more credit, and debtors would fail, probably after depletion of assets and collateral; all creditors would be losers in that situation.

After consideration of the arguments and policy questions involved, the Court concludes that the Final Order should be deemed to be protected by provisions of § 364(e). The Final Order falls within the purview of § 364(c) and it did not exceed

the intended scope of § 364. Under the circumstances of this case, this condition seems to have been necessary to induce Jetlease to extend more credit which is the underlying purpose of § 364. See, *EDC Holding Company,* 676 F.2d 945, 947 (7th Cir.1982). It is inappropriate for the Court to rewrite this Loan Agreement merely because Movants believe they can negotiate a better deal.

### C. *Good Faith.*

■ Movants claim that the Loan Agreement was hurriedly prepared and it was, and that it permitted Jetlease to improperly use leverage, and, in effect, to capitalize unfairly on the Trustee's situation. Movants allege that this equals bad faith. However, the record clearly indicates that the Loan Agreement was negotiated arms' length with the Trustee and Trustee's counsel and that Jetlease complied with emergency demands from the Trustee. The Trustee was unable to obtain credit on more favorable terms and all creditors, including Movants, supported the cash infusion. Jetlease's good faith is demonstrated by the fact that, at the Trustee's request, it funded a substantial portion of the loan prior to Court approval of the Loan Agreement. Jetlease assumed a substantial risk in funding the loan. Based on these facts, the Court concludes that Jetlease acted in good faith. See, *In re: Adams Apple, Inc.,* 829 F.2d 1484 (9th Cir.1987); *In re: Ellingsen MacLean Oil Co., Inc.,* 834 F.2d 599, 605 (6th Cir.1987).

### D. *Section 105(a).*

■ 11 U.S.C. § 105(a) provides additional authority for the Court to approve financing as negotiated between the Trustee and Jetlease, including the acknowledgment of the prepetition cancellation of mutual pre-petition obligations. Bankruptcy courts are, in essence, courts of equitable jurisdiction. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). To permit the exercise of this jurisdiction, Congress granted bankruptcy courts the authority under § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, bankruptcy courts "have the authority to take equitable steps not specifically authorized by the bankruptcy laws...." *Matter of Inter. Gold Bullion Exchange, Inc.,* 53 B.R. 660, 667 (Bankr.S.D.Fla.1985).

One of the major purposes of a reorganization proceeding is "to preserve the going concern value of the debtor's business for the mutual benefit of the debtor and his creditors." *Mater of Levinsky,* 23 B.R. 210, 215 (Bankr.E.D.N.Y.1982). By avoiding foreclosure, liquidation or a premature sale, the court maintains the ability of junior interests to receive some form of recovery from the debtor's property. *Id.*

In the case at bar, the Loan Agreement provided for an inducement to Jetlease to extend post-petition credit thus preventing the *immediate closing* of the airline, liquidation and the loss of jobs and probably zero return for creditors. The benefits realized from the preservation of the estate's going concern value through this loan has accrued to all creditors' interests. Therefore, the Loan Agreement and the Trustee's acknowledgment that certain obligations between the estate and Jetlease and/or its subsidiaries were cancelled prepetition was clearly necessary and appropriate to effectuate the purposes of Chapter 11 and reflected the economic realities of the situation.

Based on the above, it is:

ORDERED:

1. Aviation Engine Service, Inc.'s Motion for Reconsideration of September 17, 1992 Final Order Authorizing Debtor to Obtain Credit from Jetlease, Inc. is denied.

2. First Union's Motion for Reconsideration of Final Order Authorizing Florida West Gateway, Inc. to Obtain Credit from Jetlease, Inc. is hereby denied.

DONE AND ORDERED.