In re TAMOJIRA, INC., Debtor.

Bankruptcy No. 94–34438.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 18, 1997.

Michael A. Condyles, Loc Pfeiffer, Maloney Barr & Huennekens, Richmond, VA, for Trustee.

Frank Cowan, Cowan & Owen, Richmond, VA, for Old Hundred Mill.

Jeffrey M. Sherman, Morrison & Hecker, Washington, DC, for Debtor.

Gregg R. Nivala, Office of United States Trustee, Richmond, VA.

## *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On February 12, 1997, the court held a hearing on Old Hundred Mill's motion to reconsider an order entered January 21, 1997. For the reasons set forth in this memorandum opinion, the motion will be denied.

### Findings of Fact and Procedural History

The debtor's bankruptcy estate and Old Hundred Mill each own an undivided one-half interest in a 92.16–acre and a 25.41–acre parcel of property in Chesterfield County, Virginia. Based on appraisals submitted by the Chapter 7 trustee, the court values the estate's interests at $438,000 for the former and $31,000 for the latter.[1] This represents only a gross value, however, as Chesterfield County has asserted a tax lien on the two parcels for unpaid real estate taxes which on December 1, 1996, totaled $365,256.65.

---

1. This finding deviates somewhat from the appraisals proffered by the firm which the trustee had employed. That firm had valued the bankruptcy estate's interests at $329,000 and $23,000 respectively. (*See* Trustee's Ex. 2.) These estimates had been produced by assigning a value to each parcel as a whole, dividing the number in half, and then discounting that number by 25%. According to the firm's representative, the discount had been employed because an owner of an undivided one-half interest inevitably suffers disadvantages (such as a restricted freedom to develop) not incurred by one who holds the full estate. Under both contracts proposed in this case, however, the purchaser of the bankruptcy estate's interest ultimately will obtain the entire parcel in fee simple. Therefore, the court can find no reason to apply the 25% discount to the appraisals.

On December 16, 1996, the court held a hearing on the trustee's motion to sell the estate's interest in both parcels to Old Hundred Mill pursuant to 11 U.S.C. § 363. Under the proposed sales contract, Old Hundred Mill agreed to pay $469,000 as the purchase price for both interests contingent only on the trustee conveying marketable title. The contract contemplated that the sale would close within 15 days "of the date that the Bankruptcy Court approves the sale and all appeals, if any, are exhausted or the time for such appeals has expired." At the hearing, Old Hundred Mill further consented to increasing its deposit from $20,000 to $100,000 and to waiving its right to cancel the contract if settlement costs happen to exceed "usual and customary" amounts.

The debtor objected to the agreement with Old Hundred Mill and asked the court to approve a sale of the one-half interest in the 92.16–acre parcel to Westbridge Development. Under the contract proposed by the debtor, Westbridge agreed to pay $276,276 in cash at the closing and $276,276 in the form of a three-year promissory note secured by the property. Westbridge retained the right to terminate the contract within 90 days, however, if Old Hundred Mill would not sell its one-half interest in the parcel for $6,000 per acre or if Westbridge could not secure county approval for a proposed subdivision.

The trustee offered his own testimony at the hearing, and Old Hundred Mill called both a real estate appraiser and an engineer familiar with the workings of the Chesterfield County Planning Commission. Nearly all this testimony focused on the drawbacks of the debtor's proposed contract and the status of the properties to be sold. Other than introducing his agreement with Old Hundred Mill, the trustee provided the court with only a one sentence summary of its terms and a recommendation that it be approved. Old Hundred Mill at no time sought to tender any of its representatives as a witness, and the trustee testified that he did not "know anything about Old Hundred Mill." (R. at 41.)

At the close of the trustee's case, a real estate broker and the president of Westbridge testified for the debtor. After considering all the evidence presented, the court issued a ruling from the bench. The court had no difficulty in rejecting in the debtor's proposed contract, since it represented merely a 90–day option with no sufficient commitment from Westbridge. Turning to the contract proffered by the trustee, the court found it to be viable and for a purchase price equal to the properties' fair market value. For these reasons, the court granted the trustee's motion to sell and instructed the trustee to submit a proposed order with findings of fact and conclusions of law.

The following exchange then occurred:

MR. CONDYLES (counsel for the trustee): Your Honor, am I to take it that the Court's findings, finds also that this is a good faith purchaser of the property within the meaning of—

THE COURT: The motion will be granted.

MR. CONDYLES: Yes, sir.

THE COURT: Any questions about the Court's ruling?

MR. CONDYLES: Your Honor, if we do not have an agreement on the language of the order, could we submit respective orders?

THE COURT: If you all can't get together on the form, submit your own orders.

MR. CONDYLES: Thank you.

THE COURT: Thank you. Court is adjourned.

This represented the first instance in which either the trustee or Old Hundred Mill had raised the issue of 11 U.S.C. § 363(m),[2] although counsel for the debtor had mentioned the subsection during his cross-examination of the trustee. (*See* R. at 49–51.)

2. Section 363(m) provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless authorization and such sale or lease were stayed pending appeal."

When the debtor, the trustee, and Old Hundred Mill later could not agree on a proposed form of order, the trustee filed a motion to present his own version to the court. At a hearing held on January 21, 1997, the court discovered that the dispute did center on whether Old Hundred Mill would be deemed a "good faith" purchaser under § 363(m). The court chose to take the matter under advisement and then, on January 21, 1997, entered an order without the "good faith" finding.

On January 24, 1997, Old Hundred Mill filed a motion to reconsider, arguing that the court had in fact made such a finding at the end of the December 16, 1996, hearing by responding to the trustee's inquiry with "the motion is granted." The trustee filed a response to lodge his support for the motion, though the debtor asserted that no reason existed to reconsider the order as entered.

### Discussion and Conclusions of Law

■ Notwithstanding Old Hundred Mill's reading of the record from December 16, 1996, this court did not rule on its status as a "good faith" purchaser under § 363(m). Rather, the court merely granted a motion to sell "pursuant to 11 U.S.C. § 363(b) and (h)." (Trustee's Mot. to Sell Property at 2.) Since the trustee had made no mention in that motion of either § 363(m) or "good faith," the court finds the argument proffered by Old Hundred Mill to be without merit.

Nevertheless, the court has reviewed the record to discern whether a finding of "good faith" can be made on the facts presented. In *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir.1985), the Court of Appeals for the Fourth Circuit defined a "good faith purchaser" under § 363(m) as "one who purchases the assets for value, in good faith, and without notice of adverse claims" (internal quotations omitted). With the court having found that the offer made by Old Hundred Mill equals the fair market value of the estate's interests, the purchase is "for value." *See id.*

(noting that " 'value' has repeatedly been defined as 75% of the appraised value of the asset"). Moreover, the parties have not raised the specter of any adverse claim which might derail the purchase and of which Old Hundred Mill could have notice.

This leaves only that part of the Fourth Circuit's definition circular in nature—whether Old Hundred Mill has acted in "good faith." To the court's dismay, absolutely no evidence on this question was presented at the December 16, 1996 hearing. In fact, the trustee admitted that he knew nothing about Old Hundred Mill and the history behind its one-half interest in the two parcels. In short, the court is faced with a record devoid of any facts on which a finding of good faith could be made.

Both the trustee and Old Hundred Mill have suggested, however, that the objecting party has the burden of showing "bad faith." At least one circuit court has disagreed. In *New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 901 F.2d 1359 (6th Cir.1990), a Chapter 11 debtor had moved the court to approve a post-petition financing arrangement with its pre-petition lender. A holder of preferred stock in the debtor argued on appeal that 11 U.S.C. § 364(e) [3] does not protect a financing order absent an express finding of good faith. Though refusing to reach the question of whether the burden rested on the debtor or the objecting party, the appellate court did hold that "an implicit finding of 'good faith' in a § 364(e) context is insufficient and that 'good faith' under the section should not be presumed." *Id.* at 1366.

■ I not only concur with the Sixth Circuit Court of Appeals on this issue, but I believe that the ruling applies equally to § 363(m). The question of "good faith," though sometimes difficult to apply or to define, never should be treated as lightly as it has been in this case. As the record

---

**3.** Section 364 governs the manner in which a debtor or a trustee may obtain credit postpetition. With language nearly identical to that in § 363(m), § 364(e) provides: "The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal."

indicates, both the trustee and Old Hundred Mill considered it only as an afterthought. This court certainly will not make a finding of "good faith" under § 363(m) where, although an objection to the sale has been filed, no evidence is presented about the purchaser and the trustee has made no inquiry.[4] With the record silent on the question, so this court will remain silent.[5]

A separate order will be entered.

### ORDER

On February 12, 1997, the court held a hearing on Old Hundred Mill's motion to reconsider the order entered January 21, 1997. For the reasons set forth in the memorandum opinion accompanying this order, the motion will be denied.

IT IS THEREFORE ORDERED that Old Hundred Mill's motion to reconsider is denied.

---

4. Surprisingly, even though Old Hundred Mill has asked the court to make additional findings, no request has been made to present further evidence.

5. At least one circuit court has held that, "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 149–50 (3d Cir.1986). The Fourth Circuit, in an unpublished disposition, has suggested that such a finding may indeed be a "good idea." Both trustees and debtors should be aware that, if the Fourth Circuit chooses to turn its "good idea" into a mandate, motions to sell will be denied without some evidence of the purchaser's good faith.