FORESIDE MANAGEMENT
COMPANY, LLC,
Debtor.

Keltic Financial Partners,
LP, Appellant,

v.

Foreside Management Company, LLC,
and Chittenden Trust Company, d/b/a
Chittenden Bank, Appellees.

BAP No. 08–027.
Bankruptcy No. 08–20120–JBH.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 11, 2009.

Robert J. Keach, Esq. and Jessica A. Lewis, Esq., on brief for Appellant.

Richard P. Olson, Esq., on brief for Appellee, Foreside Management Company, LLC.

Jacob A. Manheimer, Esq., on brief for Appellee, Chittenden Trust Company.

Before VOTOLATO, VAUGHN, and CARLO, Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Judge.

Keltic Financial Partners, LP ("Keltic"), appeals from the bankruptcy court's order authorizing Foreside Management Company, LLC (the "Debtor"), to: (1) purchase certain specialized racking equipment from its primary secured lender, Chittenden Trust Company ("Chittenden"); (2) obtain postpetition credit from Chittenden to finance the purchase; and (3) modify an existing lease with one of the Debtor's tenants. Keltic argues that the bankruptcy court erred in approving the proposed transaction because the Debtor did not show that it was unable to obtain more favorable financing and because the transaction was not in the best interests of the estate. The Debtor and Chittenden (collectively, the "Appellees") argue that this appeal should be dismissed as moot pursuant to § 364(e).[1] For the reasons set forth

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy

below, we agree with the Appellees and dismiss this appeal as moot.

### Background

The Debtor is the owner of a warehouse and office building located in Gorham, Maine ("Property"), and leases space in the warehouse to tenants. The warehouse contains, among other things, a large specialized warehouse racking system ("Racking System") offering high bay, narrow aisle racking which some of the Debtor's tenants use under the terms of their leases.

Prior to the bankruptcy filing, Keltic loaned more than $3 million to one of the Debtor's warehouse tenants, Foreside Group LLC ("Foreside Group"). In connection with the loan, the Debtor guaranteed Foreside Group's obligations to Keltic, and granted Keltic a security interest in the Racking System. In addition, Chittenden, the Debtor's primary secured lender, subordinated its security interest in the Racking System to Keltic's interest in the same. As a result, Keltic acquired a first priority security interest in the Racking System, subject only to the rights of certain warehouse tenants to use the system under their respective leases.

Foreside Group eventually defaulted on its obligations to Keltic, and Keltic foreclosed on its collateral and conducted a public auction of various items of personal property. The auction was governed by the Terms & Conditions of Public Auction 08-40 ("Auction Terms"), which contained the following provision: "No items may be transferred from one bidder to another;

neither prior to nor after payment has been made."

The Debtor was a registered bidder at the auction, with approximately $56,000 in cash available to bid. At the auction, the Debtor purchased some of the former inventory of Foreside Group for $40,000. Although the Debtor was also interested in buying the portion of the Racking System previously used by Foreside Group ("Racking Equipment"),[2] it was outbid by American Surplus, Inc. ("ASI"), who purchased it for approximately $20,000. Following the conclusion of the auction sale, the Debtor filed a chapter 11 bankruptcy petition.

Thereafter, the Debtor entered negotiations to purchase the Racking Equipment, reaching three agreements in that regard: (1) an agreement to purchase the Racking Equipment from ASI for $80,000; (2) an agreement with one of its tenants, Creative Imaging Group, to modify its existing lease to increase the amount of rented space and to prepay a rental amount of $25,000 to be used by the Debtor to purchase the Racking Equipment; and (3) an agreement with Chittenden to advance the Debtor an additional $50,000 to purchase the Racking Equipment, secured by its existing collateral, and to permit the Debtor to use $5,000 of its cash collateral to complete the purchase price. The Debtor filed a motion seeking approval of the foregoing agreements ("Motion to Borrow"). Keltic objected, arguing that: (1) the proposed sale from one registered bidder (ASI) to another (the Debtor) violated the so-called "anti-collusion provision" con-

---

Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

**2.** Only the portion of the Racking System used by Foreside Group was being sold (re-

ferred to herein as "Racking Equipment"). All other portions of the Racking System were subject to the use of existing tenants and, therefore, were not listed for sale in the auction catalog. The Racking Equipment at issue here provides approximately 22,000 square feet of racked warehouse space.

tained in the Auction Terms; and (2) the Debtor had no prospect for reorganization and, therefore, the proposed transactions were not in the best interests of the estate. Thereafter, the Debtor filed an amended Motion to Borrow ("Amended Motion to Borrow"), purporting to resolve Keltic's objection by proposing that Chittenden purchase the Racking Equipment from ASI (rather than the Debtor purchasing it directly from ASI) and then sell the Racking Equipment to the Debtor on the same terms as that set forth in the prior Motion to Borrow.

After an evidentiary hearing on the Amended Motion to Borrow, the bankruptcy court entered an order granting the motion ("Borrowing Order") and authorizing the Debtor to purchase the Racking Equipment from Chittenden and to finance that purchase on the terms set forth in the Amended Motion to Borrow. Keltic appealed.

### Jurisdiction

■ Before addressing the merits of a dispute, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on

the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ Generally, orders authorizing postpetition financing pursuant to § 364 are final orders. *See Bank of New England v. BWL, Inc.*, 121 B.R. 413 (D.Me.1990) (considering appeal of order approving postpetition borrowing under § 364(d)); *see also United States v. Sterling Consulting Corp. (In re Indian Motocycle Co., Inc.)*, 289 B.R. 269, 283 (1st Cir. BAP 2003) (noting that order granting a superpriority lien pursuant to § 364 is a final order).

### Standard of Review

■ The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). In determining whether to approve postpetition financing, a bankruptcy court acts "in its informed discretion." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y.1990). Therefore, we review the bankruptcy court's decision to approve postpetition financing for an abuse of discretion.

### Discussion

■■ We begin by addressing the Appellees' claim that the protections afforded postpetition lenders pursuant to § 364(e) render this appeal moot. Section 364(e) provides:

The reversal or modification on appeal of an authorization under this section to obtain credit and incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit *in good faith,* whether or not

such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority of lien, were *stayed pending appeal.*

11 U.S.C. § 364(e) (emphasis added). The purpose of this provision is to encourage lenders to extend credit to debtors in bankruptcy by eliminating the risk that any lien securing the loan will be modified on appeal. *See Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490, 1493 (11th Cir.1992); *In re Florida West Gateway, Inc.*, 147 B.R. 817, 819 (Bankr.S.D.Fla.1992) ("Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide 'incentives to the creditor to extend postpetition credit' "). The protection afforded lenders under this section is substantial. "[A] lender that extends credit in reliance on a financing order is entitled to the benefit of that order, even if it turns out to be legally or factually erroneous." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir.1990).

 Under the express terms of § 364(e), absent a stay pending appeal, an appellate court cannot reverse an authorization to obtain credit or incur debts unless the lender did not act in good faith. *See New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 901 F.2d 1359, 1363 (6th Cir.1990). The legislative history of § 364(e) supports this conclusion:

Subsection (e) provides the same protection for credit extenders pending an appeal of an authorization to incur debt as is provided under section 363[m] for purchasers: the credit is not affected on appeal by reversal of the authorization unless the authorization and the incurring of the debt were *stayed pending appeal.* The protection runs to a *good faith lender*, whether or not he knew of the pendency of the appeal.

*Id.* at 1363 n. 6 (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 347, *reprinted in* 1978 U.S.C.C.A.N. 5987, 6303) (emphasis added). Thus, the relevant questions under this section are: (1) whether the party challenging the order obtained a stay pending appeal; and (2) whether the lender acted in good faith in extending the new credit. *Id.* at 1364.

## A. Failure to Obtain a Stay

 Many courts have held that because § 364(e) prohibits courts from modifying or vacating an order authorizing postpetition borrowing, an aggrieved creditor's failure to obtain a stay pending appeal requires dismissal of the appeal as moot. *See BWL, Inc.*, 121 B.R. at 417.[3] As the U.S. Court of Appeals for the Ninth Circuit stated:

> The policies behind section 364(e) . . . . indicate that a claim is moot as soon as a lender has relied on the authorization. . . . It reflects the general notion that an appeal is moot when a change in circumstances prevents effective relief and the specific notion in bankruptcy

**3.** *See also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 563 (3d Cir.1994); *Revco*, 901 F.2d at 1364; *Unsecured Creditors' Committee v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 604–605 (6th Cir.1987); *Burchinal v. Central Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1487–89 (9th Cir.1987); *White* *Rose Food v. General Trading Co. (In re Clinton Street Food Corp.)*, 170 B.R. 216, 220 (S.D.N.Y.1994); *Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.)*, 92 B.R. 38, 44 n. 10, 51–52 (S.D.N.Y.1988); *Butler Paper Co. v. Graphic Arts Lithographers, Inc. (In re Graphic Arts Lithographers, Inc.)*, 71 B.R. 774, 776–77 (9th Cir. BAP 1987).

law that there is a need for finality in orders regarding stays.

*Adams Apple,* 829 F.2d at 1489.

In this case, Keltic did not seek or obtain a stay of the Borrowing Order, and it is undisputed that Chittenden has already disbursed the funds. Keltic argues, however, that this appeal is not moot as the court can fashion other meaningful relief. According to Keltic, "[t]he Panel has the authority to either overturn the Borrowing Order or, in the alternative, grant [Keltic] a first priority lien in the Racking to the extent of the $60,000 difference in sale price." However, § 364(e) expressly prohibits courts from adjusting or vacating an order authorizing postpetition borrowing in the absence of a stay of that order. *See* 11 U.S.C. § 364(e).[4] In addition, Chittenden has already disbursed the loan in reliance on the Borrowing Order, and those eggs cannot be unscrambled. *See Swedeland Dev. Group,* 16 F.3d at 560–61(acknowledging that to the extent a postpetition loan has been completely disbursed, the validity of the debt incurred and the superpriority lien securing it cannot be affected, and, therefore, no effective relief can be granted); *see also Western Pacific,* 181 F.3d at 1196 n. 4 (noting that where funds have been fully distributed, the transaction merits "full § 364(e) protection"); *BWL, Inc.,* 121 B.R. at 417. Even if the Panel were to conclude that the Borrowing Order was not appropriate on the facts of this case, Keltic is without an effective remedy on appeal. Therefore, in the absence of a stay or other effective

relief, all that remains is to review whether Chittenden acted in good faith.

## B. Good faith

▪▪▪ Keltic argues that Chittenden is not entitled to the protection afforded lenders under § 364(e) because it did not act in good faith. Specifically, Keltic argues that: (1) there is no evidence in the record of Chittenden's good faith status; (2) good faith cannot be presumed; and (3) good faith was lacking because the sale of the Racking Equipment was prohibited by the Auction Terms and the Appellees attempted "to end-run" that prohibition by inserting Chittenden as a straw purchaser. It is clear from the record that the bankruptcy court did not make an express finding regarding Chittenden's good faith. Keltic argues that this is fatal to the mootness argument under § 364(e). We disagree.

▪▪▪ The Ninth Circuit discussed the concept of good faith in *Adams Apple,* stating:

> To determine good faith we look to the integrity of an actor's conduct during the proceedings. Misconduct defeating good faith includes fraud, collusion, or an attempt to take grossly unfair advantage of others. A creditor fails to act in good faith if it acts for an improper purpose. Knowledge of the illegality of a transaction also defeats good faith.

*Adams Apple,* 829 F.2d at 1489 (citations and internal marks of quotation omitted). *Adams Apple* established that courts should "presume the post-bankruptcy

---

**4.** *See also Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC),* 430 F.3d 1215, 1219 (9th Cir.2005) (holding that it could not invalidate postpetition financing agreement because to do so would clearly "affect the validity of any debt incurred" which is prohibited by § 364(e)); *Clinton Street Food,* 170 B.R. at 220 (holding that § 364(e) prohibits not only outright invalida-

tion of a lien or priority in the absence of stay, but also modification of the terms of postpetition lender's bargained-for collateral); *see also Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re Western Pacific Airlines, Inc.),* 181 F.3d 1191, 1196 (10th Cir.1999) ("[W]e read § 364(e) to apply not just to the validity of financing itself, but also to the terms of collateralization").

creditor's good faith and then inquire to see whether the presumption can be overcome." *See id.* at 1490–91. Other appellate courts have similarly inferred good faith from the record. *See, e.g., BWL, Inc.,* 121 B.R. at 417 n. 5 ("Appellant does not complain on appeal that Key Bank failed to act in good faith when it granted the postpetition secured loan to Debtor in return for the super-priority lien. Further, Appellant did not raise the issue of good faith in the Bankruptcy Court's hearings. Thus, there is nothing in the record to suggest that Key Bank acted other than in good faith"); *Graphic Arts Lithographers,* 71 B.R. at 776 ("Since the credit allowed the Debtor to continue its business operations on terms similar to its prepetition financing arrangements, the loan served a proper purpose under the Code. In these circumstances we find the Bank acted in good faith and conclude that it is entitled to the protection provided for in Section 364(e)"); *see also Clinton Street Food,* 170 B.R. at 220 (noting that "[t]here is no allegation that [the lender] or any other party acted in bad faith in connection with the Financing Order"). Although some courts have held that a bankruptcy court order authorizing postpetition financing must include an explicit finding that the loan is being extended in good faith,[5] we believe that these cases are not persuasive where, as here, there is no evidence of any bad faith or improper motive on the part of the lender.

The record in this case supports an inference that Chittenden acted in good faith. Although the bankruptcy court did not use the term "good faith," it made specific findings that there was no collusion or violation of the Auction Terms in connection with the sale of the Racking Equipment to Chittenden and then from Chittenden to the Debtor. Accordingly, it is implicit in the bankruptcy court's findings that Chittenden's agreement to finance the purchase was made in good faith. In addition, the bankruptcy court had repeated dealings with the parties and was in a position to judge their motives and character. We conclude, therefore, that Chittenden's good faith can be inferred from the record and, therefore, that § 364(e) applies.

## CONCLUSION

For reasons set forth above, we **DISMISS** this appeal as **MOOT** under § 364(e).

---

5. *See, e.g., Revco,* 901 F.2d at 1366; *see also In re Tamojira, Inc.,* 212 B.R. 824, 826 (Bankr.E.D.Va.1997); *General Elec. Capital Corp. v. Hoerner (In re Grand Valley Sport & Marine, Inc.),* 143 B.R. 840, 848 (Bankr. W.D.Mich.1992).