**In re REVCO D.S., INC., et al., Debtors.**

**NEW YORK LIFE INSURANCE CO., Plaintiff–Appellant,**

v.

**REVCO D.S., INC., et al., Defendants–Appellees.**

Nos. 89–3488, 89–3489.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1990.

Decided April 27, 1990.

See also, 6th Cir., 898 F.2d 498.

Joseph Patchan, Baker & Hostetler, Cleveland, for debtor.

L. Stewart Hastings, Gallagher, Sharp, Fulton & Norman, Cleveland, Richard Lieb (argued), Kronish, Lieb, Weiner & Hellman, New York City, for plaintiff-appellant.

Thomas R. Lucchesi, Joseph Patchan, John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, Robert J. White (argued), Evan M. Jones, O'Melveny & Myers, Los Angeles, Cal., Patrick A. Murphy, J. Craig Gilliland, Murphy, Weir & Butler, San Francisco, Cal., Joshua L. Berger, Eric A. Schaffer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Roger J. Stevenson, Roetzel & Andress, Akron, Ohio, Stuart Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., Brad E. Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants-appellees.

Before WELLFORD and GUY, Circuit Judges, and HULL,[*] Chief District Judge.

WELLFORD, Circuit Judge.

This appeal arises out of an order by the bankruptcy court approving a debtor-in-possession financing arrangement proposed by Revco D.S., Inc. ("Revco"),[1] and a group of lenders, including Wells Fargo Bank, N.A., and Marine Midland Bank, N.A. (collectively, the "Banks"). Pursuant to the financing arrangement, the Banks agreed to lend up to $145 million to Revco. In turn, pursuant to section 364 of the Bankruptcy Code, the Banks received superpriority liens on Revco's assets senior to the liens of certain pre-petition creditors, including appellee Mellon Bank, N.A., as indenture trustee. Under the financing arrangement, Revco also proposed to use "cash collateral" as defined in section 363. To provide adequate protection to the Banks which were pre-petition secured creditors, Revco proposed to make periodic cash payments to the Banks in an amount equal to the interest on the pre-petition debt.

After a hearing on the matter, the bankruptcy court entered an order approving the financing arrangement, the use of cash collateral, and the protection proposal of Revco. New York Life Insurance Company and New York Life Insurance and Annuity Corporation (together, "NYLIC"), holders of preferred stock, appealed to the district court, contending that the bankruptcy court erred in approving Revco's payment of interest on the pre-petition secured debt. The district court dismissed NYLIC's appeal because NYLIC failed to obtain a stay pending appeal as required by section 364(e). NYLIC contends in this subsequent appeal that the district court erred in dismissing its appeal from the order of the bankruptcy court.

## FACTS AND PROCEDURAL HISTORY

Revco is a wholly-owned subsidiary of ANAC Holding Corporation ("ANAC"). Revco and its subsidiaries operate approximately 2000 retail drug stores in 28 states. NYLIC owns $75 million of preferred stock in ANAC. NYLIC appeals from an order entered by the bankruptcy court on August 24, 1988, approving an agreement for debtor-in-possession financing and adequate protection. In particular, NYLIC challenges the authorization of periodic payments of interest on very substantial pre-petition indebtedness.

Pursuant to an indenture (the "Indenture") dated as of August 15, 1985, as amended, between Revco and Mellon Bank, Mellon became the trustee for the holders of 11¾% sinking fund debentures issued by Revco in the aggregate principal amount of $125 million.

---

[*] The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

[1] For purposes of administration only, the bankruptcy court consolidated the cases of Revco and 66 of its affiliates. Revco's bankruptcy followed a leveraged buy-out and restructuring of its large retail chain operation.

Pursuant to certain loan agreements (the "Credit Agreements") entered into in 1986 between the Banks and Revco, the Banks agreed to lend money to Revco.[2] ANAC, on behalf of Revco, guaranteed the performance of these Credit Agreements. To secure the indebtedness arising under the Credit Agreements, Revco granted the Banks security interests in and liens and mortgages upon substantially all of Revco's property and other assets.

In accordance with certain requirements of the Indenture, the security interest and liens and mortgages upon the collateral granted to the Banks were conveyed in trust to secure the obligations to the Banks arising under the Credit Agreements and the obligations to the indenture trustee, on an equal and ratable basis. It is undisputed that the debt owed to the Banks and indenture trustee is fully secured.

On July 28, 1988, Revco filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. After filing the petition in bankruptcy, Revco was faced with a dilemma prompted by the forthcoming holiday season, its major sales period. As a result of the Banks' liens, all of Revco's cash in Chapter 11 constituted "cash collateral" of the Banks, and thus Revco could not use its cash without the Banks' consent or a court order. *See* 11 U.S.C. § 363(c)(2). Moreover, Revco was unable to obtain credit from its trade creditors, most of whom placed it on a cash-on-delivery or cash-in-advance basis. Without cash or new credit, Revco could neither rebuild its extremely low inventories for the critical Christmas sales period nor replenish its pharmaceutical departments.

Revco, therefore, sought debtor-in-possession financing from several lenders. Revco, however, was unable to obtain unsecured credit on any terms and several lenders refused to consider a proposal without time to study Revco's situation. Revco also was unable to obtain adequate credit secured by security interests or liens junior to the existing security interests or by liens on the few remaining unencumbered properties of the estate. Because Revco's principal assets were subject to the liens and security interests of the Banks and the indenture trustee, all of the proposals received by Revco for debtor-in-possession financing contemplated the granting of a superpriority lien under section 364(d) of the Bankruptcy Code.

Revco concluded that the best financing terms were offered by Wells Fargo Bank and Marine Midland Bank (the "DIP Lenders").[3] Revco and the DIP Lenders bargained at arms' length over the terms and conditions of an agreement entitled "Stipulation and Agreement Regarding Debtor–in–Possession Financing, Use of Cash Collateral and Adequate Protection" (the "Stipulation"). This agreement provided for the extension of credit on terms that were more favorable than Revco could have obtained from any other source. Under the Stipulation, the DIP Lenders agreed to provide Revco with $145 million in post-petition credit and to allow Revco to use existing cash collateral in the course of its Chapter 11 operations. Pursuant to the Stipulation, Revco agreed to grant a superpriority lien to the DIP Lenders senior to the lien of the Banks and indenture trustee. (Their former debt was therefore also subordinated). The Stipulation also allowed Revco to grant a *pari passu* first priority lien to secure post-petition trade credit as inducement for trade creditors to extend credit.

Revco recognized, and the indenture trustee noted, that pursuant to section 363 it could not use cash collateral unless the Banks and indenture trustee consented or unless the court authorized such use and provided "adequate protection" to the Banks and the indenture trustee. The in-

---

**2.** The interest rate under the Credit Agreements is 1¾% over the prime rate. The Credit Agreements provide that if Revco defaults on the payment of interest, the interest rate would increase to 3% over the prime rate. Such default would result in an additional interest payment, plus late charges.

**3.** All the banks that were involved in the pre-petition financing are involved in the post-petition financing offered by the DIP Lenders, however, not to the same extent.

denture trustee also noted that pursuant to section 364(d)(1) Revco could not grant a superpriority lien to the DIP Lenders unless the court authorized such a lien and provided "adequate protection" to the Banks and the indenture trustee as existing secured creditors. *See* 11 U.S.C. § 364(d)(1).

To provide adequate protection to the Banks and the indenture trustee, Revco proposed to make periodic payments equal to the contractual interest accruing on Revco's pre-petition obligations to the Banks under the Credit Agreements and to the indenture trustee under the Indenture. This proposal avoided the possibility of higher default interest under the terms of the preexisting security agreement.

Revco filed a motion requesting the bankruptcy court to enter an order approving the Stipulation within a week of filing its bankruptcy petition. NYLIC, as owner of preferred stock, objected to the Stipulation, and particularly to Revco's proposal to pay accruing interest to the Banks and indenture trustee as "adequate protection."

The final hearing on the motion to approve the Stipulation was not scheduled until after the appointment of official creditors' committees pursuant to Section 1102 of the Bankruptcy Code. The committees obtained counsel, reviewed the Stipulation and discussed it with Revco and the Banks. Within a month of the bankruptcy filing, the bankruptcy court held a hearing to review the Stipulation and NYLIC's objection to the Stipulation. Representatives of both creditors' committees appeared at the hearing and supported the Stipulation, as did Revco's common stockholders. NYLIC was the sole objector.

NYLIC supported Revco's obtaining the loan but it objected to the fact that the Banks were to be paid prepetition interest under the Credit Agreements. The bankruptcy court approved the Stipulation and specifically decided that the payment of accruing interest was appropriate as adequate protection.[4]

With respect to the challenged periodic interest payments, the bankruptcy court received evidence that the Banks' leasehold collateral was declining and would continue to decline in value. The bankruptcy court found that the Banks were entitled to adequate protection payments because the Stipulation permitted Revco to use the Banks' cash collateral. Because Revco could only obtain post-petition credit by granting a lien superior to the Banks' preexisting liens, the bankruptcy court found that section 364(d)(1) of the Bankruptcy Code required Revco to provide the Banks with adequate protection. As Revco was in such financial condition that it could not provide replacement liens because substantially all of its assets were already subject to both pre-petition and post-petition liens, the periodic cash payments of interest were deemed necessary and proper.

NYLIC filed a notice of appeal of the bankruptcy court's order approving the Stipulation questioning only that portion of the bankruptcy court's order that authorized periodic interest payments as adequate protection on the pre-petition debt. NYLIC, however, made no attempt to obtain a stay of the bankruptcy court's order pending appeal.[5]

The Banks filed a motion to dismiss NYLIC's appeal of the bankruptcy court's decision. The indenture trustee and Revco joined in the Banks' motion to dismiss. First, the Banks asserted that section 364(e) of the Bankruptcy Code required dismissal because NYLIC failed to obtain a stay of the bankruptcy court's decision pending appeal. Second, the Banks asserted that constitutional or equitable principles required dismissal of NYLIC's appeal because the Stipulation had been granted and the court could not grant effective

---

**4.** As noted earlier, Revco had attempted to obtain financing from six other banks, but those banks required at least three months to process the loan and demanded higher interest rates and fees than those provided for in the Stipulation.

**5.** Meanwhile, the Banks and trade creditors extended credit totaling approximately $140 million and obtained first priority liens under the Stipulation for that credit.

relief. Third, the Banks asserted that NYLIC as a shareholder was not an aggrieved party and lacked standing to prosecute the appeal.

The district court granted the Banks' motion to dismiss NYLIC's appeal, concluding that section 364(e) of the Bankruptcy Code bars reversal or modification of a bankruptcy court's order. The district court then entered an order terminating the action. The district court held that section 364(e) required dismissal of NYLIC's appeal because NYLIC failed to obtain a stay of the bankruptcy court's order. Because of NYLIC's procedural failure, the district court did not address the merits of the appeal. NYLIC has appealed from this order, again without requesting a stay.

From the date of the bankruptcy court's order approving the stipulation to the date of the motion to dismiss, Revco purportedly had borrowed approximately $30 million of the $140 million total available under the Stipulation. As of year-end, Revco purportedly had utilized approximately $109 million in post-petition trade credit. As a result, Revco has granted post-petition liens totalling approximately $140 million, which are superior to the Banks' and indenture trustees' pre-petition first priority liens.

## STANDING AND JURISDICTION

We conclude first that as holder of all the preferred stock in the holding company which owned and controlled Revco, NYLIC does have standing, not only to object to the post-petition financing arrangement now in dispute, but also to pursue the appeal from the bankruptcy court and from the district court decision. The standing question is separate and apart from the question of appealability of the bankruptcy order in the instance where NYLIC has failed to seek or to attempt to obtain a stay. In short, we find that NYLIC is an aggrieved party which may appeal if proper procedures are followed under the applicable bankruptcy laws. We conclude, furthermore, under these circumstances that the district court entered a final order which is appealable to this court. *See In re Chateaugay Corp.*, 876 F.2d 8 (2d Cir. 1989); *In re Adams*, 809 F.2d 1187 (5th Cir.1987); *In re Sax*, 796 F.2d 994 (7th Cir.1986). We, therefore, hold that we have jurisdiction to consider the appeal although we may determine upon examination of the record that a requisite basis to consider the appeal on its merits is lacking.

## SECTION 364(e) STATUTORY LANGUAGE AND HISTORY

The district court, basing its decision upon section 364(e) of the Bankruptcy Code, dismissed NYLIC's appeal of the bankruptcy court's decision because NYLIC failed to apply for or obtain a stay pending appeal. NYLIC argues that section 364(e) of the Bankruptcy Code does not immunize appellate review of the order directing Revco to resume interest payments on its pre-petition secured debt. NYLIC further asserts that the bankruptcy court lacked the authority to direct Revco to continue the current payment of interest on pre-petition debt.

Section 364(e) provides:

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, *to an entity that extended such credit in good faith*, whether or not such entity knew of the pendency of the appeal, *unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.*

11 U.S.C. § 364(e) (emphasis added). There is language, then, that absent a stay pending appeal, we may not reverse an authorization to obtain credit or incur debts unless the lender did not act in good faith.[6] The

---

**6.** The legislative history of § 364(e) indicates: Subsection (e) provides the same protection for credit extenders pending an appeal of an authorization to incur debt as is provided under section 363[m] for purchasers: the credit is not affected on appeal by reversal of the authorization *unless the authorization and the incurring of the debt were stayed pending*

questions which arise under this section are: (1) whether the creditor attempting to challenge an authorization of credit obtains a stay pending an appeal; and (2) whether the lender or group of lenders acts in good faith in extending the new credit.

## FAILURE TO OBTAIN A STAY

■ We have held along with others that, under section 364(e), an aggrieved creditor's failure to obtain a stay pending appeal may require dismissal of an appeal as moot. *In re Ellingsen MacLean Oil Co.*, 834 F.2d 599, 604–05 (6th Cir.1987), *cert. denied*, ── U.S. ──, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *see also In re Adams Apple, Inc.*, 829 F.2d 1484, 1487–89 & n. 6 (9th Cir.1987); *In re Texaco Inc.*, 92 B.R. 38, 44 n. 10, 51–52 (S.D.N.Y.1988); *In re Graphics Arts Lithographers, Inc.*, 71 B.R. 774, 776–77 (9th Cir. BAP 1987).

NYLIC argues that the interim payments ordered by the bankruptcy court are severable from the rest of the financing order and are not protected from review under section 364(e). Courts, however, reviewing financing orders subject to section 364(e) have been reluctant to sever individual provisions, whether legal or not, in the absence of a stay pending appeal. *Ellingsen*, 834 F.2d at 603–04; *see also Adams Apple*, 829 F.2d at 1488 & n. 6 (holding that cross-collateralization provision would not be severed from financing agreement in the absence of a stay); *Texaco*, 92 B.R. at 52 (holding that absent stay pending appeal, change-in-control clause could not be severed from financing agreement without undermining that agreement).

NYLIC specifically asserts that *Ellingsen* is inapplicable because the interest payment provision was not within the protective shield of section 364(e). In *Ellingsen*, as here, the bankruptcy court entered an order authorizing post-petition financing by a pre-petition secured lender. As an incentive for the banks involved to extend this

further credit, the debtors agreed not to challenge the validity of the banks' pre-petition security interest. *Ellingsen*, 834 F.2d at 601–02. The unsecured creditors' committee immediately appealed the order, but like appellants in this case, did not obtain a stay. *Id.* at 602. On appeal, the committee argued that the order approving the waiver exceeded the scope of section 364(e) and therefore was not entitled to protection under section 364(e).

Despite conceding that it did not fit neatly into any of the categories of section 364(c), we nevertheless concluded that the waiver provision involved was "part of the whole 'package'" authorized under section 364(c) and therefore was subject to section 364(e) protection. *Id.* at 602–03. Affirming the order of the district court, we instructed that "appellants could have avoided the application of section 364(e) by seeking a stay of the order pending appeal." *Id.* at 604.

Unlike *Ellingsen*, the bankruptcy court in this case specifically authorized the Stipulation pursuant to sections 361, 363 and 364 of the Bankruptcy Code. In addition, the periodic interest payments which were part of the "package" approved by the court were held to constitute adequate protection and are specifically authorized, in fact required under the Bankruptcy Code. *See* 11 U.S.C. §§ 363(c) and 364(d). The facts here, then, are stronger for approval of the post-petition arrangement than in *Ellingsen*.

The bankruptcy court held that "adequate protection" was necessary for the Banks' post-petition loans where the priming liens, including the liens for trade credit, totalled approximately $140 million and the value of the collateral was subject to decline.[7] *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (holding that it is fundamental that a

---

*appeal. The protection runs to a good faith lender,* whether or not he knew of the pendency of the appeal.
H.R.Rep. No. 595, 95th Cong., 2nd Sess. 347, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5987, 6303 (emphasis added).

7. The bankruptcy court found that without the loan Revco's financial position would have deteriorated significantly within two or three months.

secured creditor be compensated for post-petition deterioration of its collateral); [8] *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 139 (10th Cir.1988) (holding that a secured creditor is entitled to adequate protection when the value of its lien is subject to erosion or is diminishing as a result of the grant of a senior lien under section 364 on property in which the creditor has a security interest for the purpose of obtaining post-petition financing); *In re First South Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir.1987) (holding that when "super priority financing displaces liens on which creditors have relied in extending credit," courts must be "particularly cautious" in determining whether an existing creditor is adequately protected).

NYLIC argues that *Timbers* supports its position that the interim payments are illegal under the Bankruptcy Code. In *Timbers*, however, the Supreme Court held that *undersecured* creditors are not entitled to compensation for "lost opportunity cost" during a Chapter 11 case. Other than the holding that the value of the collateral is the interest that should be adequately protected, *Timbers* does not appear to apply to this case. First, *Timbers* involved *undersecured* creditors, whereas in this case the Banks are oversecured. Second, the Supreme Court held that undersecured creditors are not entitled to be compensated for lost opportunity costs, not that creditors should be denied compensation for any decline in the value of their collateral. Finally, the Court held that the undersecured creditor in *Timbers* could not *require* the debtor to make adequate protection payments, not that the debtor was forbidden from making the payments as an exercise of its business judgment, if court approved. Unlike *Ellingsen*, the financing order in this case specifically provides for a reservation of the right to challenge the amount,

validity and priority of the Banks' claims and liens.

## GOOD FAITH

 NYLIC claims that the post-petition financing and Stipulation was hurriedly arranged and that it permitted the Banks improperly to utilize their leverage, and, in effect, to capitalize unfairly on Revco's situation.[9] NYLIC also contends that section 364(e) does not protect a financing order unless an explicit finding of good faith is made by the bankruptcy court. The bankruptcy court did not expressly address this contention that the lack of an explicit finding of good faith deprives the bankruptcy court's order of section 364(e) protection. Noting that NYLIC did not challenge the good faith of the Banks at the hearing held before the order was entered, the district court went on to consider several findings of the bankruptcy court which it found implicitly established "good faith":

> [T]he court did find that based upon the evidence before him, "it appears to be in the best interest of the creditors to approve the stipulation and agreement." Findings at 7–8. The court further found that after reviewing the testimony and the arguments of counsel, "the Banks are entitled to receive current interest payments on their pre-petition debt." *Id.* at 9.
>
> Furthermore, the court found that the debtor was unable to obtain trade credit, Findings at Par. 12, and that everyone including New York Life was in favor of the additional cash infusion. Findings at Par. 14. Without the loan, the only testimony before the court established that the debtors' financial conditions would deteriorate significantly. Findings at Par. 15. And, finally, the court found that the debtors attempted to obtain alternate financing from six different

---

**8.** In *Timbers,* the Supreme Court stated:

It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the

security is depreciating during the term of the stay.

484 U.S. at 370, 108 S.Ct. at 629.

**9.** NYLIC claims that millions are at stake and that the "good faith" requirement must be specifically addressed; in short, should not be presumed.

banks and beside the fact that their financing would take considerably longer and not be available to meet the holiday requirement, they offered interest rates and related loan fees in excess of the agreement entered. Findings of Fact at Par. 19. *These factors indicate the banks acted in good faith and constitute an implicit finding by the bankruptcy court. See In re Graphic Arts Lithographers, Inc.,* 71 B.R. 774, 777 (9th Cir. BAP 1987) (relying on *Ellingsen* ) (emphasis added).

Extension of credit "in good faith" is a requisite spelled out specifically in § 364(e). The district court observed that it found an indication by the bankruptcy court that "the banks acted in good faith." There was no express finding of this essential factor by the bankruptcy court. Determination of "good faith" is a mixed determination of fact and law. A careful reading of appellant NYLIC's brief indicates the following points on the "good faith" question: (1) the Banks lacked "good faith" status; (2) leverage was improperly used; (3) "good faith" cannot be presumed; and (4) "good faith" was lacking because of the improper "interest payment" provision.

Much of NYLIC's brief attacks the arrangement for payment of pre-petition interest based on what purportedly happened after the arrangement was approved; NYLIC claims that much of the committed loan funds were not actually paid out for many months. We, however, deem this essentially irrelevant because the essence of the controversy was the willingness of the Banks (and others) to commit to the future extension of credit of $145 million and to subordinate existing first lien fully collateralized claims and interests to the new loan lien superpriority. Obviously, since no one at the time could foresee exactly when the new loan funds would be needed and advanced, this was not an issue before the bankruptcy court in its decision about "adequate protection" for the new lenders.

NYLIC also complains that the Banks "held liens on virtually all of Revco's assets" and thus exercised leverage in respect to making the new loans. (Appellant's brief at p. 41.) Again, the bankruptcy court, the creditors' committee, the common stockholders, and the trustee were fully aware of this fact. The other parties made no objection, and the bankruptcy court necessarily considered these ramifications in giving its approval. Appellants add only that they asserted at the bankruptcy court hearing "that the leverage employed by the Banks precluded their gaining 'good faith' status within the meaning of § 364(e)." (Appellant's brief pp. 42–43).

We do not decide here whether the burden on the good faith issue rests upon NYLIC or upon the Banks. In a case somewhat analogous to this, although involving use of the expression "in good faith" in bankruptcy code § 363(m), the court held that the bankruptcy court must make an explicit finding on this question despite appellants' failure to seek a stay in challenging the order. *In re Abbotts' Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 148–49 (3d Cir.1986). We, therefore, hold that an implicit finding of "good faith" in a § 364(e) context is insufficient and that "good faith" under that section should not be presumed.

In an abundance of caution, then, and without any indication on the merits of the "good faith" issue, we REMAND this question for an explicit finding by the bankruptcy court in accordance with the principles herein expressed. Due to the circumstances involved, we urge a prompt determination of this question after affording the parties concerned adequate opportunity to be heard. Since NYLIC did not pursue a stay, we do not disturb in any way the actions taken by the parties in reliance upon the challenged order of the bankruptcy court granting approval of the interest payments on pre-existing debt.

Our decision here is not in conflict with our prior holding in *Ellingsen.* A dissatisfied litigant who fails to seek a stay when questioning a court-approved post-petition financing arrangement providing adequate protection may forgo a right to appeal if the bankruptcy court addresses all the requisites of the applicable portions of §§ 362–

364 of the bankruptcy code. A failure to object on the part of a party seeking to challenge such an order may also constitute a waiver.

We, therefore, hold that, under the special circumstances present in this case involving a major undertaking to infuse new money or credit to a bankrupt debtor in reorganization, NYLIC did not foreclose a right to appeal by failing to seek a stay in the absence of an express "good faith" finding by the bankruptcy court. We do not hold that the district court was in error in relying upon *Ellingsen* and other like authorities; we hold only that we are not satisfied that the district court was correct in concluding that NYLIC did not raise the " 'good faith' issue" in the bankruptcy court. The stakes here are sufficiently high and the question sufficiently in doubt that we REMAND to the bankruptcy court for prompt resolution of the limited issue involved.

We note that none of the other issues and arguments raised by appellant NYLIC, except the good faith question herein discussed, persuade us that it is entitled to relief as sought in its brief and oral argument.

HULL, Chief District Judge, dissenting.

I concur in the judgment of the court insofar as it finds that NYLIC has standing to object to the post-petition financing arrangement and to appeal from the bankruptcy court to the district court. However, I must respectfully dissent from its interpretation of 11 U.S.C. § 364(e) and from its suggestion that NYLIC's appeal was procedurally defective because of its failure to obtain a stay and saved only because the bankruptcy court did not address the good faith issue.

As the majority correctly noted, the legislative history of Section 364(e) indicates that this section was intended to protect the good faith post-petition lender. It does not protect the pre-petition creditors, even if, in some situations, these entities are also the post-petition lenders. And it should not be read to insulate from appellate review every challenge to the legality of deals pre-petition creditors may make in order to ensure themselves "adequate protection."

Section 364(e) does not require a stay. It merely ensures that, in the absence of a stay, if an appeal results in a reversal or modification of an authorization of post-petition credit, the superpriority lien granted to any institution that extended post-petition credit in good faith will not be affected.

As a practical matter, it is unrealistic to expect the party seeking an appeal to obtain a stay of an emergency extension of post-petition credit because this would have the effect of destroying the debtor-in-possession just at the moment it was trying to save itself through reorganization. Appeals which merely challenge the terms provided pre-petition creditors should be allowed to proceed without a stay.

As pointed out by Judge Merritt in his dissent in *In re Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599 (6th Cir.1987), the Section 364(e) protection speeds the extension of emergency credit because lenders are assured that their security for the loan—the superpriority—will not be taken away after the funds have been advanced. The court should be very sensitive to the problems facing bankruptcy courts and their need to rapidly arrange post-petition financing without sacrificing pre-petition creditors. Obviously bargains will be struck which will not satisfy all parties. However, the need for an efficient, practical, emergency response should not outweigh the fundamental right to judicial review on appeal. If a simple finding of good faith by a bankruptcy court would insulate from appellate review any arrangement, even an illegal one, in the absence of a stay, then an essential element of our legal system would have been sacrificed in the name of expediency.

Accordingly, I would reverse the district court's dismissal and remand this case to the district court for consideration of NYLIC's appeal on its merits.