21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 In re PIONEER INVESTMENT SERVICES COMPANY, Debtor.
The CAIN PARTNERSHIP, LTD., Plaintiff-Appellant,
v.
PIONEER INVESTMENT SERVICES COMPANY, Defendant-Appellee.
 Nos. 92-6090 to 92-6092.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 These three bankruptcy cases, consolidated for our disposition, arise from disputes over the rights to some 95 acres of leased property in Knox County, Tennessee. In 1974, appellants, the Cain Partnership (the Partnership), holders of a long-term lease, sublet the land to Colonial Enterprises (Colonial) for a term of twenty years.[1] Terms were $1,500 per month plus any applicable taxes. The Colonial Lease contained the following provision, the meaning of which is at issue in this case:
 
 
 2
 This lease may be assigned or the leased premises may be sublet in whole or in part for any lawful purpose at the will of the Lessee. However, the Lessee shall remain liable to the Lessor for lease payment and payment of taxes.
 
 
 3
 On July 17, 1984, Colonial assigned the Lease to Premiere Investment Properties, Inc. (Premiere). On April 13, 1987, Premiere assigned the Lease to Pioneer Investment Services Co. (Pioneer, or the Debtor). On April 16, 1987, Pioneer and the Partnership signed a "Lease Assumption and Attornment Agreement" in which the Partnership recognized Pioneer as the tenant under the Lease.
 
 
 4
 The land, apparently undeveloped at the time the Lease was originally made, now boasts two shopping malls, (Towne & Country Shopping Center and the Commons at Towne & Country) plus "commercially valuable undeveloped acreage"; the appraised value of the Debtor's interest is some $27 million. Pioneer filed a voluntary Chapter 11 petition in April 1989; the Bankruptcy Court approved a plan of reorganization in October 1990.
 
 A. Postpetition financing order
 
 5
 The first of these appeals involves the Partnership's belated attempt to undo a postpetition financing arrangement, including a superpriority lien in favor of Fleet Bank, approved by the Bankruptcy Court in March 1990. On February 2, 1990, the Debtor filed a motion to enter into secured debt in the amount of $847,000 in order to pay off some of its creditors. The Debtor indicated its intention to use the value of its leased property and the shopping center as security for the loan. Proper notice of the motion was sent to all parties; the Partnership neither objected to the motion nor attended the hearing on the matter. By written order issued on March 1, 1990, the Bankruptcy Court granted its permission for the Debtor to borrow an amount not to exceed $847,000 from Fleet Bank (Fleet), on the terms specified in the Debtor's motion. The Order granted superpriority to Fleet for the amount of the new loan. The Partnership did not seek leave to appeal.
 
 
 6
 On September 28, 1990, the Partnership filed a motion to reconsider the Order, citing Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b).[2] After a hearing, the Bankruptcy Court denied the motion from the bench. The Partnership appealed; the District Court affirmed the Bankruptcy Court's decision.
 
 
 7
 The Partnership argues first that the Bankruptcy Court's Order granting the Debtor permission to enter into the postpetition loan agreement is void for vagueness and thus unenforceable, and second, that New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.), 901 F.2d 1359 (6th Cir.1990), requires that any bankruptcy court order granting permission for a debtor to obtain postpetition financing must include an explicit finding that the financing is being obtained, and the loan extended, in good faith.
 
 
 8
 We review denial of a Rule 60(b) motion for abuse of discretion. Davis by Davis v. Jellico Community Hosp., Inc., 912 F.2d 129, 132-33 (6th Cir.1990). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). The rule may not be invoked to obtain substantive review of an underlying decision or final judgment from which the movant did not appeal in the first instance. Jensen v. Klecker, 702 F.2d 131, 132 (8th Cir.1983). Appealing the denial of a Rule 60(b) motion "does not bring up the underlying judgment for review." Peake v. First Nat'l Bank and Trust Co., 717 F.2d 1016, 1020 (6th Cir.1983).
 
 
 9
 We find that the Bankruptcy Court cannot be viewed as having abused its discretion by denying the Motion to Reconsider. The essence of the Partnership's argument is that the Bankruptcy Court's order was erroneous as a matter of law, that the errors rendered the order void, and that therefore, the Partnership is entitled to have the order vacated. This is patent nonsense. If the Bankruptcy Court's order was erroneous as a matter of law, it was incumbent upon the Partnership to bring a direct appeal. Rule 60(b) is not, as we have already indicated, a substitute for such appeal, and judicial error is not the kind of mistake which Rule 60(b) encompasses. See 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2858 (1973). In any case, judicial errors do not render orders void. Id. Sec. 2862; Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.), 596 F.2d 1092, 1099 (2d Cir.1979). Orders are void only if the court that rendered them lacked jurisdiction over the subject matter or the parties, or if the court acted in a manner inconsistent with due process. Id. The Partnership can demonstrate neither a lack of jurisdiction nor a denial of due process here.
 
 
 10
 To the extent that the Partnership's first argument, that the order is void for vagueness, is intended as an attack on the subject matter jurisdiction of the Bankruptcy Court, it is clear from the order itself, the Bankruptcy Court's reasons for denying the Motion to Reconsider and the District Court's order affirming that denial that there is no merit to this contention. "The power to interpret a prior judgment is within the inherent equitable powers of the Court issuing the judgment." Coca-Cola Bottling Co. v. Coca-Cola Co., 98 F.R.D. 254, 273 (D.Del.1983) (citing United States v. Swift & Co., 286 U.S. 106, 114 (1932)). Whether a judgment is impermissibly vague is determined by the issuing judge, and his determination of his own intent controls. United States v. 60.22 Acres of Land, 638 F.2d 1176, 1178 (9th Cir.1980), cert. denied, 451 U.S. 985 (1981). We concur with the District Court's observation that "counsel for the Cain Partnership is the only one who has experienced difficulty in understanding the [financing] order." District Court Opinion filed August 10, 1992 at 10. The Bankruptcy Court experienced no such difficulty; there the question ends.
 
 
 11
 Included in the Partnership's argument that the order is void for vagueness is the additional contention that as a matter of Tennessee law, the Debtor had lost all rights in part of the property included in the superpriority lien securing the post-petition debt which the order purports to approve, and that, as a result, the Bankruptcy Court lacked jurisdiction to determine any rights as to that property. This contention has even less merit. A court has jurisdiction to determine its own jurisdiction, and a finding that subject matter jurisdiction exists is res judicata as to that issue, see Durfee v. Duke, 375 U.S. 106 (1963); the Partnership cannot claim that the determination of the status of that property was outside the Bankruptcy Court's jurisdiction since, as is set forth in subsection (2) of this opinion, that issue was decided and affirmed in other branches of this very litigation. The Partnership makes no claim that the Bankruptcy Court lacked jurisdiction over the parties, and the Partnership candidly admits that it had notice and the opportunity to be heard in regard to the financing order and declined to take advantage of that opportunity or even to appeal the result.
 
 
 12
 The Partnership's second argument, that the order is void and must be vacated pursuant to Rule 60(b) because it lacks an explicit finding of good faith on the part of the postpetition lender, is likewise devoid of merit. In Revco, we noted that either a failure to seek a stay against execution of an objectionable financing order or a failure to object in a timely fashion to the original motion or to the order "may ... constitute a waiver." Revco, 901 F.2d at 1366-67. The Bankruptcy Code provides for notice and hearing prior to the issuance of the court's permission to enter into a postpetition loan which may affect creditors' claims, 11 U.S.C. Sec. 364(b), and for direct appeal of the order, id.
 
 
 13
 The record shows that the Partnership received actual notice of the pending motion, but neither filed any objection, participated in the hearing, nor appealed the resulting Order directly. Instead, the Partnership challenged the validity of the Order on several grounds, the question of good faith not among them, in its Rule 9024/Rule 60(b) motion brought several months after the Order was issued. If the failure to include an explicit finding of good faith was error, it does not affect the jurisdiction of the Bankruptcy Court, it does not render the order void, it was waived by the Partnership, and it certainly cannot be raised for the first time on appeal of the District Court's order affirming the Bankruptcy Court's denial of the Motion to Reconsider. Unless we, in our discretion, believe that a "plain miscarriage of justice" would result from our refusal to address an issue never properly raised before the court of first instance, we will not consider such an issue an appellant raises before us. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988). We see no "plain miscarriage of justice" in this context.
 
 
 14
 In bringing this Rule 9024/Rule 60(b) motion, the Partnership attempts nothing other than to relitigate issues already properly decided, and to have the courts examine the substance and validity of a financing order it never bothered properly to challenge or appeal. The Partnership thus has made no showing of any ground for relief under Rule 60(b). In the absence of any such showing, it would have been an abuse of discretion for the Bankruptcy Court to have granted the Motion for Reconsideration, and error for the District Court to do anything other than to affirm the Bankruptcy Court. Accordingly, the order of the District Court affirming the denial of the Motion for Reconsideration is affirmed.
 
 
 15
 B. Sale of property outside ordinary course of business
 
 
 16
 The second of these appeals arises out of an attempt by the Debtor to sell the shopping centers to another investor. On October 31, 1991, the Debtor filed a motion in the Bankruptcy Court pursuant to 11 U.S.C. Sec. 363(b)(1) seeking permission to "sell property outside the ordinary course of business." The Partnership filed an objection, arguing that due to breach of the Colonial Lease, the Debtor had lost all rights in the property, that the courts had not yet resolved a prior appeal challenging the Lease,[3] and that the Bankruptcy Court lacked subject matter jurisdiction over the motion, since it raised questions of Tennessee law properly resolved in that state's courts. Both the Bankruptcy and District Courts rejected the Partnership's arguments, noting that the "pending" litigation had resolved the breach issues in favor of the Debtor, and that the law of the case thus controlled. The Partnership appeals.
 
 
 17
 The Partnership claims that the Colonial Lease prohibits partial assignments; using grammatical analysis and sentence diagrams, the Partnership argues that the phrase, "This lease may be assigned or the leased premises may be sublet in whole or in part" means that the premises may be sublet "in whole or in part," but that the Lease may be assigned only in its entirety. This is the same analysis used by the Partnership in its earlier, unsuccessful efforts to have the courts, including this court, declare, in the context of the Debtor's motion to assume the Colonial Lease, that the Debtor had breached the Lease, and that therefore the Lease had terminated prepetition.
 
 
 18
 The Partnership also challenges again the subject matter jurisdiction of the federal courts to interpret the Colonial Lease, arguing that Tennessee law controls and that the question is purely of state concern. This is the same jurisdictional issue raised in the earlier litigation concerning assumption of the Lease. See supra note 3.
 
 
 19
 Neither the Bankruptcy Court nor the District Court accepted the Partnership's arguments the first time around,[4] and we, too, rejected them, holding that the Partnership had conceded jurisdiction, and affirming the courts' holding that where, as here, there was no termination clause in the Colonial Lease and no affirmative conduct on the part of the Partnership to terminate the Lease at the time of the alleged breach, the Lease had not been terminated. See Cain Partnership, Ltd. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.), 946 F.2d 445 (6th Cir.1991), cert. denied, 112 S.Ct. 2304 (1992). As to whether the actual phrasing of the Lease permits or prohibits partial assignment, we summarily affirmed the Bankruptcy and District Courts by holding that "[t]he other issues raised by the Partnership are without merit." Id.
 
 
 20
 The Partnership's arguments, in the wake of our previous decision, are frivolous. The "law of the case," the Partnership contends, does not extend to the resolution of collateral issues which were not (in their view) necessary to the court's disposition of the case, since, among other things, "[it] is not uncommon for appellate courts to conclude that lower courts reached the right result for the wrong reasons." As for our having declared in the previous appeal that the Partnership's state law arguments were "without merit," the Partnership now argues:
 
 
 21
 An issue raised, in some other context for some other purpose, might have much merit but lack merit in another context. The sole determinant, before this court, of meritoriousness or lack thereof was whether the issue was sufficient to persuade this court to reverse. If an issue had no such persuasive quality, obviously, in the context of the opinion of this court, it was an issue without merit.
 
 
 22
 Our minds have not been changed. We reiterate, as did the District Court, the Bankruptcy Court's original construction of the disputed Lease provision, that in the phrase, "This lease may be assigned or the leased premises may be sublet in whole or in part," the phrase " 'in whole or in part' modifies 'may be assigned' as well as 'may be sublet.' " See Bankruptcy Court Memorandum filed Sept. 15, 1989 at 18-22. The Partnership's contention that the Lease may not be partially assigned and its contention that we have not decided this issue before are without merit.
 
 
 23
 C. Motion to dismiss or convert to Chapter 7
 
 
 24
 The third appeal arises out of the Bankruptcy Court's denial of the Partnership's motion to dismiss or convert the Debtor's Chapter 11 proceeding to a Chapter 7 liquidation proceeding. The Colonial Lease contains a provision requiring the sublessee, in this case, the Debtor, to pay all taxes in a timely fashion. At the time the Debtor entered bankruptcy, some $83,000 in local property taxes on the shopping center and leased premises were past due. Upon its assuming the Lease, the Debtor set up an escrow account at Valley Fidelity Bank & Trust Co. ("Valley") and made assurances to the Bankruptcy Court that all past due and future taxes would be paid out of this fund. This arrangement was incorporated into the plan of reorganization. However, certain taxes arising postpetition were not paid by Valley.
 
 
 25
 On November 12, 1991, the Partnership filed a "forcible entry and detainer" lawsuit in Tennessee court alleging that the Valley account contained insufficient funds to cover the tax liability, that the taxes had not been paid, and that such postpetition failures to pay taxes constituted breaches of the Plan and of the Colonial Lease. The Partnership also moved the Bankruptcy Court on November 22, 1991 to dismiss or convert to Chapter 7 the Debtor's Chapter 11 case, also alleging material breaches of the Plan and the Lease on the same grounds. On February 14, 1992, the Bankruptcy Court issued an order denying the motion, finding that while some taxes had been paid late, no taxes had been legally delinquent, and holding that the Debtor had not materially breached the Plan; further, the court held that it had no jurisdiction over what it termed a "post-confirmation dispute" regarding the Lease. The District Court affirmed, and the Partnership appeals.
 
 
 26
 The decision to dismiss or convert a Chapter 11 case falls within the sound discretion of the Bankruptcy Court and is thus reviewed only for an abuse of that discretion. In re Abijoe Realty Corp., 943 F.2d 121, 128 (1st Cir.1991). Tennessee law states that all state and local taxes "shall be due and payable on the first Monday in October," Tenn.Code Ann. Sec. 67-1-702(a); however, unpaid taxes do not become "delinquent" and subject to accrual of interest and imposition of penalties until the March 1 following each tax year, Tenn.Code Ann. Sec. 67-5-2010(b)(2). The record fully supports the factual findings of the Bankruptcy Court that the Debtor did not allow any taxes due on the leased premises to become delinquent, despite certain taxes' not being paid in October, and despite Pioneer's sometimes paying the taxes directly rather than through the escrow account.
 
 
 27
 Judge O'Neill of the Bankruptcy Court of the Northern District of Ohio has summarized the factors properly considered in reviewing a motion to convert or dismiss for breach in the context of a reorganized debtor's failure to make payments as specified in a confirmed plan of reorganization:
 
 
 28
 The relative benefit of dismissal or conversion depends on the resulting effect in a given case.
 
 
 29
 ... A confirmed plan does not become ineffective by debtor's failure to comply with its terms....
 
 
 30
 ....
 
 
 31
 Conversion of a confirmed chapter 11 case should not be "... used as a fishing expedition, especially when the lake looks so barren. The mere possibility that a claim might be found is not reason enough to convert a case." Absent a plan provision requiring conversion upon default, viable avoidance actions or other valid reason, post-confirmation conversion is not in the best interest of creditors. Post-confirmation conversion of an entity which has operated any extent of time under a confirmed plan would result in administrative problems and would consume resources that could otherwise benefit creditors.
 
 
 32
 Ohio Dep't of Taxation v. H.R.P. Auto Center, Inc. (In re H.R.P. Auto Center, Inc.), 130 B.R. 247 (Bkrtcy.N.D.Ohio 1991) (citations omitted). As was the case in H.R.P. Auto Center, the Plan of Reorganization in this case includes no provision for conversion in the event of default, and Pioneer has operated for over two years under the Plan, quite evidently to the benefit of the property's value.
 
 
 33
 Of course, the point of setting up the escrow account and making this arrangement part of the Reorganization Plan was to assure the court and the interested parties that taxes on the property comprising the Debtor's estate would not go unpaid. And Pioneer has indeed paid the taxes, and not allowed any delinquency to occur. In H.R.P. Auto Center, the debtor had in fact permitted unpaid taxes to become delinquent, and the court concluded that the debtor's failure to pay was a material default of the plan; nonetheless, the court, in its discretion, decided that despite the breach, the best interests of the creditors and the estate militated against converting the reorganized debtor's case at such a late date.
 
 
 34
 The factors arguing against conversion or dismissal in H.R.P. Auto Center present themselves even more strongly in the case at bar, where the Bankruptcy Court determined that since the tax payments had been timely made, no material breach had occurred. We find no error in the District Court's order affirming the denial of the Partnership's Motion. The order of the District Court is therefore affirmed.
 
 
 35
 D. Motion to certify issues of state law to the Tennessee Supreme Court.
 
 
 36
 The Partnership has moved the Circuit to certify three issues to the Tennessee Supreme Court for final resolution of certain State law questions:
 
 
 37
 1. Is a commercial lease of real property forever barred from termination, in spite of a material breach of condition thereof, absent an express provision specifying termination as a remedy?
 
 
 38
 2. Does Tennessee law permit a party to a lease of commercial real property unilaterally, i.e. without consent of the other party, to divide the lease by pro tanto assignments to multiple assignees?
 
 
 39
 3. Are real property taxes "due" on the first Monday in October of the year for which the taxes are assessed or are such taxes "due" at any time on or before the last day of February in the year immediately following the year for which the taxes are assessed?
 
 
 40
 Issues (1) and (2) have been decided by the Sixth Circuit in the earlier phase of this litigation, In re Pioneer Inv. Servs. Co., 946 F.2d at 450. And in that opinion, this Circuit also denied the Partnership's motion to certify an issue nearly identical in substance to issue (1) above. See id.
 
 
 41
 In light of our disposition of the issues raised in subsection (3) of this opinion, and because the Bankruptcy Court had proper jurisdiction to resolve the question of when taxes become "due" for purposes of the Plan, issue (3) needs not be resolved under Tennessee law to wrap up this case. The Partnership's Motion to Certify is therefore denied.
 
 
 42
 The judgments of the District Court affirming the Bankruptcy Court in all three of these appeals are AFFIRMED. The motion to certify issues of state law to the Tennessee Supreme Court is DENIED. Finding this appeal to be frivolous within the meaning of Federal Rule of Appellate Procedure 38, we award double costs to the appellee.
 
 
 43
 BATCHELDER, Circuit Judge, concurring in part and dissenting in part.
 
 
 44
 I agree completely with the Court's disposition of this case, with one exception: I think this case cries out for an award of sanctions beyond double costs against the Partnership and its counsel for the frivolousness of this appeal. I would award attorneys' fees to the appellee.
 
 
 45
 As should be evident to the reader by now, this appeal is devoid of any merit. The Court has taken the trouble to discuss the various and sundry arguments the Partnership has put forth, not merely to prevent another round of litigation and appeals suggesting, among other things, that when a court adjudges certain issues to be "without merit," it does not mean what it says. We have dealt with these consolidated appeals at considerable length to illustrate and make crystal clear this point: counsel for the Partnership has attempted to relitigate issues resolved by this Circuit in the earlier appeal, to reargue settled issues dismissed summarily as lacking merit by the Bankruptcy Court and the District Court, and to clutter and obstruct the speedy and efficient disposition of this otherwise resolved bankruptcy case with fallacious, groundless, and occasionally scandalous arguments.[1] To their everlasting credit, both Judge Stair of the Bankruptcy Court and Judge Jordan of the District Court have exhibited the patience of Job in their careful consideration and disposition of the seemingly endless stream of motions and actions brought by the Partnership, a party which Judge Jordan in his most recent decision in this case generously described as "a persistent litigant." District Court Opinion filed August 10, 1992 at 2 n. 1. Enough, however, should be enough, particularly in view of the increasingly limited resources at the disposal of the federal courts to handle an ever-increasing caseload. The abuses of this case demand sanctions, and, sua sponte, I would impose them jointly and severally upon the Partnership and its counsel, Larry E. Parrish.
 
 
 46
 This Court may authorize sanctions against an appellant pursuing a frivolous appeal that causes the appellee delay and/or costs the appellee time and money. This power is authorized by 28 U.S.C. Sec. 1912 and Fed.R.App.P. 38. The assessment may be single or double costs against the offending litigant, against counsel, or both. See McNally v. MacDonald, 932 F.2d 968, 1991 WL 73247 at * 2-3 (6th Cir.1991) (unpublished per curiam); Reynolds v. Humko Prods., 756 F.2d 469, 473 (6th Cir.1985). This Court may also award attorneys' fees and other expenses. McNally, 932 F.2d 968, 1991 WL 73247 at * 3 (citing Olympia Co. Inc. v. Celotex Corp., 771 F.2d 888, 893-94 (5th Cir.1985), cert. denied, 493 U.S. 818 (1989)). The Seventh Circuit has taken the lead in aggressively enforcing standards of meritorious appeal. See Linda R. Hirshman, Tough Love: The Court of Appeals Runs the Seventh Circuit the Old Fashioned Way, 63 Chi.Kent L.Rev. 191, 199 ("[T]he court has been visibly wielding the stick, imposing fees and other sanctions against both parties and their attorneys with an unprecedently heavy hand for frivolous litigation.") In this Circuit, an appeal is unreasonable and sanctionable where the court "conclude[s] that no reasonable person would have thought he could succeed on appeal; to find the appeal unfounded, [the court] must conclude that the appeal had no foundation in law upon which the appeal could be brought." Wrenn v. Gould, 808 F.2d 493 (6th Cir.1987), cert. denied, 484 U.S. 1067 (1988).
 
 
 47
 All three cases comprising the Partnership's appeal illustrate attempts to relitigate settled issues, several of which the Partnership had previously appealed using nearly the same arguments before the District Court and this Court. Indeed, one peruses the record in vain for a single issue on which the Partnership has prevailed on either trip to this court. This case, then, presents a far more egregious example of frivolity than those that have been sanctioned by other circuits. For example, in District No. 8, Int'l Ass'n of Machinists v. Clearing, 807 F.2d 618 (7th Cir.1986), the court imposed costs and attorneys' fees on the appellant where the District Court had made a decisive credibility finding in favor of the appellee's witnesses, which placed on the appellant the heavy burden of showing that the District Court had abused its discretion. The court opined that appellant's "arguments before this Court constitute nothing more than a restatement of its position rejected by the district court and an attempt to plead that the district court should have credited its witnesses rather than the testimony presented by [the appellant]." Id. at 623. The court went on to note that the case "has caused a shameful waste of judicial manpower[,] ... caus[ing] this court to spend valuable time and energy on a completely meritless matter while the serious concerns of other litigants have had to wait for resolution." Id.[2]
 
 
 48
 Particularly egregious are the Partnership's arguments challenging the postpetition credit obtained by the Debtor. Noting in this context that the Partnership had adopted different arguments from those it had made before the Bankruptcy Court, Judge Jordan observed that
 
 
 49
 the Cain Partnership's Bankr.R. 9024 motion was in fact an attempt to relitigate the issues decided against the partnership by the court of appeals.... [T]he grounds for the motion stated here are afterthoughts to save the motion from being frivolous, or from subjecting the movant to sanctions.
 
 
 50
 District Court Opinion filed August 10, 1992 at 10-11. The Partnership challenges the discretionary findings of the Bankruptcy Court on this and several other matters, all of which arguments the court rejected and the District Court summarily affirmed, some of which (such as the issues involving assignment of the Colonial Lease) we had summarily dismissed in the Partnership's prior visit to this court. If the court in Clearing felt that sanctions could properly be imposed for a meritless challenge of a lower court's credibility findings the first time up the appeals ladder, then meritless arguments put forth the second time around cry out for sanctions all the more.
 
 
 51
 "The purpose of Rule 38 is to discourage litigants from wasting the time and resources of both their opponents and the judicial system with arguments that are without merit." Transnational Corp. v. Rodio & Ursillo, Ltd., 920 F.2d 1066, 1072 (1st Cir.1990). Where "repetitive and vexatious motions" lead to multiple appeals, sanctions are appropriate, even where the focus and content of the arguments have shifted over time. Matter of Hartford Textile Corp., 613 F.2d 384, 385-86 (2d Cir.1979), cert. denied, 447 U.S. 907 (1980). "Scandalous charges" against courts and opposing counsel presented without evidence to substantiate them aggravate the offense. Id. at 386 n. 3.
 
 
 52
 Novelty as well as stubbornness may deserve sanctions. Where "counsel fails to cite any relevant cases, or make any arguments, to address the district court's accurate exposition of the law," Williams v. U.S. Postal Serv., 873 F.2d 1069, 1075 (7th Cir.1989), where cases cited "are 'neither controlling nor relevant,' " id. (quoting Morris v. Jenkins, 819 F.2d 678, 681 (7th Cir.1987)), where appellant's " 'arguments and legal precedent [are] of only the most marginal relevance to the issues in dispute,' " id. (quoting Morris, 819 F.2d at 682), and where an "appeal exemplifies an 'insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position,' " id. (quoting Reid v. United States, 715 F.2d 1148, 1154 (7th Cir.1983)), sanctions are in order. Any and all of these factors characterize the Partnership's briefs and arguments in this bankruptcy case.
 
 
 53
 Bankruptcy Rule 9011, which corresponds to Fed.R.Civ.P. 11, imposes upon counsel the duty to ensure that papers filed in a bankruptcy proceeding are "well grounded in fact[,] ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" and are not "interposed for any improper purpose, such as to harass, to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case." The Partnership's motion to certify issues to the Tennessee Supreme Court is sanctionable under this rule. At least one of these issues the Partnership unsuccessfully moved to certify during the prior appeal to the Circuit; the other issues have either been decided by the Circuit in its prior opinion or, as explained, are irrelevant to the disposition of the appeal.
 
 
 54
 The Cain Partnership's efforts to date in attempting to gain possession of Pioneer's leasehold have been unsuccessful. Without a doubt, the possibility of gaining ownership of a piece of real estate now worth $27 million by showing the breach of a lease which has earned the Partnership the lordly sum of $1,500 per month gives the Partnership, and its counsel (who I notice is a member of the Partnership), every incentive to keep rolling the dice. The Seventh Circuit has observed,
 
 
 55
 Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt.... Lawyers practicing in the Seventh Circuit, take heed!
 
 
 56
 Dreis & Krump Mfg. v. International Ass'n of Machinists, 802 F.2d 247 (7th Cir.1986). I believe this Court should join our Seventh Circuit colleagues in taking the same stand and in issuing the same warning.
 
 
 
 [1]
 Throughout the litigation, and in previous cases involving these parties, this sublease has been referred to as the "Colonial Lease"; we will do the same
 
 
 [2]
 Bankruptcy Rule 9024 incorporates Fed.R.Civ.P. 60 into the Bankruptcy Code; the two are for the most part, and for the purposes of this case, functionally equivalent
 
 
 [3]
 Earlier in the bankruptcy proceedings, the Debtor moved to assume the Lease. The Partnership objected, arguing that the Debtor had breached the Lease by making a partial assignment of it; the Partnership had challenged the subject matter jurisdiction of the Bankruptcy Court to determine the issue of breach, contending that Tennessee law controlled, and the question was not for the federal courts. At the time of filing of the objection now before us on this appeal, these arguments had lost on appeal to the District Court and the Sixth Circuit. See Cain Partnership, Ltd. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.), 946 F.2d 445 (6th Cir.1991), cert. denied, 112 S.Ct. 2304 (1992). Nonetheless, since the Partnership had petitioned for rehearing en banc, it described that case as "pending" and argued that the Bankruptcy Court could take no action until the appeals process was complete
 
 
 [4]
 We note that in the earlier litigation, the District Court affirmed the Bankruptcy Court's decision on March 8, 1990. Unsatisfied, the Partnership moved the District Court to amend its judgment or rehear the case, which motion was denied on May 23, 1990. The District Court characterized this motion as "reargument" of issues already decided. The Partnership then moved under Fed.R.Civ.P. 60(b)(4) to vacate the judgment for lack of subject matter jurisdiction. In denying this motion on November 6, 1990, the District Court "wonder[ed] whether the Rule 60(b)(4) motion under consideration is frivolous." Memorandum Opinion at 6
 
 
 [1]
 I note as an example of the last, the Partnership's suggestion that the Debtor committed "actual fraud" on the Bankruptcy Court when, in agreeing to pay the property taxes as incorporated in the Plan of Reorganization, and in allegedly failing to pay them, it "defied with clinched fist the explicit command which the bankruptcy court ordered into existence...." Cain Partnership Brief, Case No. 92-6092 at 19
 
 
 [2]
 This concern is frequently central to the imposition of sanctions, particularly those imposed sua sponte. Again, the Seventh Circuit has squarely addressed the issue:
 It is immaterial that the [appellee] did not request an award of sanctions. We frequently impose sanctions on our own initiative.... Th[is] appeal has "required members of this court and its staff to expend a good deal of time and attention which could have been used elsewhere. The United States pays the salaries of the judges of this court and its staff. In wasting their time, [the appellant] also wasted the government's money. Rather than attempt to estimate the cost to the government, our policy in these cases is to award the costs reasonably incurred by the winning party, in the hope that such awards will be sufficient to deter frivolous lawsuits.
 Hill v. Norfolk and W. Ry. Co., 814 F.2d 1192, 1200-01 (7th Cir.1987) (citation omitted).